# Illinois Official Reports

## Supreme Court

*In re N.G.*, 2018 IL 121939

| | |
|---|---|
| Caption in Supreme Court: | *In re* N.G., a Minor (The People of the State of Illinois *et al.*, Appellants, v. Floyd F., Appellee). |
| Docket Nos. | 121939, 121961 cons. |
| Filed<br>Rehearing denied | August 9, 2018<br>December 17, 2018 |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of Will County, the Hon. Paula Gomora, Judge, presiding. |
| Judgment | Appellate court judgment affirmed.<br>Circuit court judgment reversed. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield, and James W. Glasgow, State's Attorney, of Joliet (David L. Franklin, Solicitor General, and Mary C. LaBrec, Assistant Attorney General, of Chicago, and Patrick Delfino, Lawrence M. Bauer, and Richard T. Leonard, of the Office of the State's Attorneys Appellate Prosecutor, of Ottawa, of counsel), for the People.<br><br>Neil J. Adams, of Joliet, for appellee. |

Kristen Messamore, of Hammel Law Offices, P.C., of Joliet, guardian *ad litem*.

Justices      CHIEF JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Justice Burke concurred in the judgment and opinion.

Justice Kilbride specially concurred, with opinion.

Justice Neville specially concurred, with opinion.

Justice Theis dissented, with opinion, joined by Justices Thomas and Garman, and dissented upon denial of rehearing, with opinion, joined by Justices Thomas and Garman.

## OPINION

¶ 1      At issue in this appeal is whether the circuit court of Will County erred when it terminated Floyd F.'s parental rights to his minor child, N.G., on the grounds that he was an unfit person within the meaning of section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2010)) because, prior to N.G.'s birth, he had been convicted of at least three felonies under the laws of this state and was therefore "depraved" (*id.* § 1(D)(i)).

¶ 2      The appellate court held that because one of the three felonies on which the circuit court had relied in making its finding of depravity—a 2008 conviction for aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6(a)(1), (a)(3)(A), (d) (West 2008))—was based on the same statute we found to be facially unconstitutional under the second amendment to the United States Constitution (U.S. Const., amend. II) in *People v. Aguilar*, 2013 IL 112116, the conviction had no legal force or effect and therefore should not have been considered by the circuit court in making its fitness determination. Consistent with that holding, the appellate court vacated Floyd F.'s AUUW conviction and reversed the trial court's finding that he was an unfit parent. Without such a finding, there was no basis for holding that termination of Floyd F.'s parental rights was in N.G.'s best interests. The appellate court therefore reversed the trial court's best interest determination as well and remanded for further proceedings. 2017 IL App (3d) 160277.

¶ 3      One member of the appellate court dissented in part. She agreed that the judgment terminating Floyd F.'s parental rights should be set aside and the cause remanded for further proceedings. Unlike the other members of the panel, however, she would have refrained from vacating the 2008 AUUW conviction, leaving that instead to the circuit court. She would also have ordered that further consideration of the petition to terminate be postponed until after the circuit court had addressed the viability of Floyd F.'s 2008 AUUW conviction. 2017 IL App (3d) 160277, ¶ 37 (Wright, J., concurring in part and dissenting in part).

¶ 4      The Department of Children and Family Services (DCFS) and the minor, through her guardian *ad litem*, separately petitioned this court for leave to appeal. Ill. S. Ct. R. 315(a) (eff.

Nov. 1, 2017). We allowed both petitions and consolidated them for argument and disposition. For the reasons that follow, we affirm the judgment of the appellate court.

¶ 5                                                    BACKGROUND

¶ 6        Floyd F. is the natural father of N.G., who was born on July 27, 2011. On December 19, 2011, while Floyd F. was incarcerated in the Department of Corrections and N.G. was living with her mother, DCFS petitioned the circuit court of Will County to adjudicate N.G. a ward of the court on the grounds that she was neglected within the meaning of section 2-3(1)(b) of the Juvenile Court Act of 1987 (705 ILCS 405/2-3(1)(b) (West 2010)) because her environment was injurious to her welfare. A guardian *ad litem* was appointed to represent N.G.'s best interests, and a temporary custody hearing was held the same day (see *id.* § 2-10). At the conclusion of the hearing, the trial court found probable cause to believe that N.G. was neglected, determined that no efforts could reasonably be made to prevent or eliminate her removal from the home, and held that it was in her best interest to be placed in shelter care.

¶ 7        During the ensuing months, Floyd F.'s mother was given care of N.G., but N.G. was subsequently placed with her maternal grandmother so that she could be together with a half-sibling. The record shows that N.G.'s mother took N.G. to visit Floyd F. in the Department of Corrections. Floyd F.'s grandmother (N.G.'s paternal great-grandmother) also took her, at least monthly, to visit Floyd F. where he was incarcerated. During those visits, Floyd F. and N.G. practiced counting numbers, reciting the ABCs, and writing N.G.'s name.

¶ 8        While N.G. was briefly returned to her mother's custody, her mother proved unable to properly care for her or to remedy the problems that had led to filing of the initial petition for adjudication of wardship. N.G. was once again placed with her maternal grandmother. Eventually, N.G.'s mother admitted the allegations of the petition, and the minor was adjudicated neglected on September 19, 2012. After a dispositional hearing, the trial court made N.G. a ward of the court, granted guardianship to DCFS with the right to place, and found Floyd F. to be an unfit parent.

¶ 9        Originally, the goal of DCFS was to keep N.G. safe while it provided services to her mother so that N.G. could be returned to her. However, 2½ years later, N.G.'s mother was still unable to maintain a safe and stable environment, and it was not foreseeable that she would be able to do so in the near future. Accordingly, DCFS sought termination of both parents' rights so that N.G. could be adopted by her maternal grandmother.

¶ 10       In August 2014, DCFS filed a motion pursuant to section 2-29(2) of the Juvenile Court Act (*id.* § 2-29(2)) to terminate the mother's and Floyd F.'s parental rights and to appoint a guardian for N.G. with the authority to consent to her adoption. DCFS sought termination on the grounds that the parents were "unfit person[s]" within the meaning of section 1(D) of the Adoption Act because they had failed "to maintain a reasonable degree of interest, concern or responsibility as to the [minor's] welfare" (750 ILCS 50/1(D)(b) (West 2010)), failed "to make reasonable efforts to correct the conditions that were the basis for the removal of the [minor]" from them (*id.* § 1(D)(m)(i)), and failed "to make reasonable progress toward the return of the [minor]" to them during any nine-month period after the end of the initial nine months following the adjudication of neglect (*id.* § 1(D)(m)(ii)). DCFS asked the court to give its guardian administrator guardianship of N.G. with the power to consent to her adoption.

¶ 11    The trial court continued the hearing on this motion twice: initially so Floyd F. could take a paternity test in order to confirm that he was N.G.'s biological father, as indicated on her unsigned birth certificate, and again because the court was concerned that Floyd F. might not have received either proper notice that his parental rights were at risk or a sufficient opportunity to participate in DCFS's services. In September 2015, the court found N.G.'s mother unfit but ruled that DCFS had failed to prove its case against Floyd F. The trial court was unwilling to find Floyd F. unfit until he had the opportunity to engage in services for at least another nine months.

¶ 12    In February 2016, DCFS filed a second motion to terminate Floyd F.'s parental rights. This time, however, it relied on an entirely new theory. Instead of citing Floyd F.'s actions or failure to act with respect to N.G.'s welfare, the conditions that were the basis for DCFS's original motion, the new motion charged unfitness based on totally different circumstances, all of which occurred before N.G. was born. Specifically, it asserted that Floyd F. had been criminally convicted of at least three felonies under the laws of this state and at least one of those convictions had taken place within five years of the filing of its motion. The three convictions on which DCFS relied were a 2008 AUUW conviction, a Class 4 felony; a 2009 conviction for unlawful use of a weapon by a felon, a Class 2 felony; and a 2011 conviction for being an armed habitual criminal, a Class X felony arising from an arrest months before N.G.'s birth. DCFS's new theory was that because of these three prior felony convictions, Floyd F. was "depraved" or presumptively "depraved," within the meaning of section 1(D)(i) of the Adoption Act (*id.* § 1(D)(i)), and therefore unfit to retain his parental rights with respect to N.G., who appears to be his only child.

¶ 13    DCFS's decision to proceed under section 1(D)(i) and abandon its claims of unfitness under the provisions of the Adoption Act asserted in its original termination motion was timely. We note, however, that DCFS made no mention of section 1(D)(i) until the five-year time limit set forth in that provision was nearing its end. Floyd F.'s most recent conviction was entered August 22, 2011. DCFS's motion seeking termination under section 1(D)(i) was not filed until February 11, 2016, more than 4½ years later, and the order terminating Floyd F.'s parental rights was entered May 12, 2016. The record offers no explanation for DCFS's decision to wait so long to invoke the provision. Under the circumstances, however, it seems likely that DCFS resorted to section 1(D)(i) only because it thought the provision offered a potential last-minute expedient for sidestepping the circuit court's rejection of its efforts to establish that Floyd F. was unfit on other grounds.

¶ 14    In any case, when the new termination hearing was held, DCFS moved to admit into evidence certified copies of all three convictions. Floyd F. objected to the admission of evidence of his 2008 AUUW conviction. He noted that there was a pending appeal that could potentially affect the validity of that conviction. The court indicated that it did not believe the appeal had any effect on the judgment of conviction and admitted all three convictions into evidence. Other admitted evidence established that respondent was currently incarcerated on his 2011 armed habitual criminal conviction and is projected to be paroled in 2019. Based on this evidence, the trial court found that respondent was depraved and, thus, unfit. As a result, the trial court found that it was in the minor's best interest to terminate Floyd F.'s parental rights.

¶ 15      Floyd F. appealed to the appellate court. In that appeal, he argued that the trial court erred in finding him depraved and therefore unfit under section 1(D)(i) of the Adoption Act because the 2008 conviction on which that determination depended was based on the specific statutory provision struck down by this court as facially unconstitutional in *Aguilar*, 2013 IL 122116, and was therefore a nullity.[1] While Floyd F. acknowledged that he had not explicitly raised this issue before the trial court, he argued that the appellate court should exercise its authority to put aside any considerations of waiver or forfeiture due to the novelty of the issue and the liberty interest at stake.

¶ 16      DCFS and N.G. responded with three arguments: (1) that respondent had forfeited the issue and failed to ask for consideration of his claim under the plain error doctrine, (2) that under our decision in *People v. McFadden*, 2016 IL 117424, the invalidity of the underlying statute did not render a conviction void but only made it subject to vacatur, and respondent had not obtained vacatur of his 2008 conviction, and (3) that the record contained no evidence that respondent was convicted under the provision found unconstitutional in *Aguilar*.

¶ 17      The appellate court reversed and remanded. It first observed that, under *McFadden*, 2016 IL 117424, ¶ 31, invalidation of respondent's 2008 conviction for AUUW did not occur automatically; rather, it had to be invalidated through a direct appeal or a collateral attack. 2017 IL App (3d) 160277, ¶ 18. The appellate court then explained that the case at hand is a civil action to determine respondent's fitness to maintain a role in the minor's life and that the continued existence of the 2008 conviction was pivotal to that determination on the basis asserted by DCFS. *Id.* ¶ 20. Accordingly, the appellate court held that the action qualified as a collateral attack and was a permissible vehicle for challenging the validity of Floyd F.'s 2008 criminal conviction. *Id.*

¶ 18      The appellate court found that its authority to vacate respondent's 2008 conviction was grounded in our precedent. *Id.* ¶ 21. It noted that in *People v. Thompson* (*Dennis Thompson*), 2015 IL 118151, we described three forms of voidness challenges recognized in Illinois: (1) challenges to judgments entered by a court without jurisdiction, (2) challenges to judgments based on a facially unconstitutional statute that is void *ab initio*, and (3) challenges to judgments that do not conform to the applicable sentencing statute. 2017 IL App (3d) 160277, ¶ 21. The third type of challenge was based on the "void sentence rule," which was recently abolished by *People v. Castleberry*, 2015 IL 116916. 2017 IL App (3d) 160277, ¶ 21. The appellate court then noted that in a pre-*Castleberry* case, this court, in *People v. Thompson* (*Ernest Thompson*), 209 Ill. 2d 19 (2004), considered a claim raised for the first time in a postconviction proceeding that the extended-term portion of a sentence was void and could be

---

[1]In *Aguilar*, we held that the provision of the AUUW statute under which Floyd F. was convicted was facially invalid because it violated the right to keep and bear arms, as guaranteed by the second amendment. *Aguilar*, 2013 IL 112116. That determination was based on the United States Supreme Court's reasoning in *District of Columbia v. Heller*, 554 U.S. 570 (2008) (holding that individuals have a right to keep and bear arms for the purposes of self-defense), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010) (holding a right to bear arms implies a right to carry a loaded gun outside of the home), as well as the Seventh Circuit's expansion of those cases in *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012) (holding Illinois's unlawful use of weapons statute and the AUUW statute, which generally prohibit the carrying of guns in public, violate second amendment right to bear arms for self-defense outside the home).

attacked at any time. 2017 IL App (3d) 160277, ¶ 22. As indicated by the appellate court, the *Ernest Thompson* court explained:

> " 'A void order may be attacked at any time or in any court, either directly or collaterally. An argument that an order or judgment is void is not subject to waiver. Defendant's argument that the extended-term portion of his sentence is void does not depend for its viability on his post conviction petition. In fact, courts have an independent duty to vacate void orders and may *sua sponte* declare an order void.' " (Emphasis omitted.) *Id.* (quoting *Ernest Thompson*, 209 Ill. 2d at 27).

The appellate court concluded that, even though the basis for voidness in *Dennis Thompson* was invalidated in *Castleberry*, the decision in that case made it clear that the voidness principles articulated in *Ernest Thompson* still apply to the two remaining valid bases for voidness (lack of jurisdiction and judgment based on a facially unconstitutional statute that is void *ab initio*). *Id.* The appellate court therefore held that Floyd F.'s claim "may be raised at any time in any court." *Id.* ¶ 23.

¶ 19    The appellate court then clarified that Floyd F. was not claiming, as the defendant in *McFadden* had, that his void conviction served as the predicate for a second conviction, both of which occurred prior to the invalidation of the statute and only the second of which he sought to vacate. *Id.* ¶ 25. It explained, while that may be the posture of the postconviction petition in respondent's 2011 habitual criminal case, it was not his argument here. *Id.* Rather, Floyd F.'s contention was that (1) his 2008 conviction had been rendered a nullity in 2013, when *Aguilar* was decided, (2) that conviction should be recognized as null and void, and vacated, and (3) this void conviction could not serve in 2016 as a basis for the imposition of a civil penalty—the loss of his parental rights. *Id.* The appellate court found these differences distinguished Floyd F.'s case from *McFadden* and, therefore, did not preclude Floyd F.'s challenge here. *Id.*

¶ 20    Consistent with this reasoning, the appellate court subsequently found that, under *Aguilar*, Floyd F.'s 2008 conviction for AUUW was void and could not serve as a basis for finding him depraved under section 1(D)(i) of the Adoption Act. *Id.* ¶ 31. It therefore vacated respondent's 2008 conviction, reversed the trial court's unfitness finding, set aside the trial court's related conclusion that termination of Floyd F.'s parental rights was in N.G.'s best interest, and remanded the case to the trial court for further proceedings. *Id.*

¶ 21    Both DCFS and N.G., through her guardian *ad litem*, petitioned this court for leave to appeal. We allowed both petitions and consolidated the proceedings for argument and disposition. For the following reasons, we affirm the appellate court's judgment.

¶ 22                                    ANALYSIS

¶ 23    We begin our review of this case by recognizing the gravity of the interests at stake. When the State secured Floyd F.'s conviction under the portion of the AUUW statute held unconstitutional in *Aguilar*, 2013 IL 112116, it violated his second amendment rights. Through this proceeding, the State seeks to use that unconstitutional conviction to secure an additional sanction: termination of Floyd F.'s parental rights. Those parental rights are fundamental.

¶ 24    The United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, § 1. The clause "guarantees more than fair process"; it offers "heightened protection against government

interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 719-20 (1997). "These liberty interests include the right to contract, engage in an occupation, acquire knowledge, marry, establish a home and raise children, and worship God." *In re M.H.*, 196 Ill. 2d 356, 362 (2001) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 572 (1972), citing *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)). Parental rights, such as the right to rear one's children or control their education, are included in the parental rights protected by the due process clause. *Pierce v. Society of Sisters*, 268 U.S. 510, 534-35 (1925). A natural parent's right to the care of his or her child is, in fact, an interest far more precious than any property right protected by that provision. *Santosky v. Kramer*, 455 U.S. 745 (1982).

¶ 25 The United States Supreme Court has stated that " '[i]t is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.' " *Troxel v. Granville*, 530 U.S. 57, 65-66 (2000) (quoting *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944)). Further, "the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by [the United States Supreme Court]." *Troxel*, 530 U.S. at 65. In light of this precedent, "it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Id.* at 66. Indeed, such rights are a "central part" of the liberty protected by that clause (*Obergefell v. Hodges*, 576 U.S. ___, ___, 135 S. Ct. 2584, 2600 (2015)), as the appellate court in this case correctly observed (2017 IL App (3d) 160277, ¶ 27).

¶ 26 Our court has likewise recognized parents' fundamental liberty interest in raising their children. See *In re M.H.*, 196 Ill. 2d at 362; *Lulay v. Lulay*, 193 Ill. 2d 455, 470-71 (2000); *People v. R.G.*, 131 Ill. 2d 328, 342 (1989); *In re Enis*, 121 Ill. 2d 124, 128-29 (1988); see also *In re Vanessa C.*, 316 Ill. App. 3d 475, 481 (2000); *In re D.R.*, 307 Ill. App. 3d 478, 482 (1999);. Because a natural parent's right to raise his or her child is a fundamental liberty interest, involuntary termination of parental rights is a drastic measure. Where a parent has not consented to relinquishment of his or her parental rights, a court has no power to terminate the parent's rights involuntarily except as authorized by statute. *In re Gwynne P.*, 215 Ill. 2d 340, 354 (2005).

¶ 27 A court's statutory authority to terminate a parent's rights involuntarily and to appoint a guardian with the right to consent to the child's adoption is delineated by the language of the Juvenile Court Act (705 ILCS 405/1-1 *et seq.* (West 2010)) and the Adoption Act (750 ILCS 50/0.01 *et seq.* (West 2010)). These acts contain strict requirements that embody Illinois's policy favoring parents' superior right to the custody of their children. 705 ILCS 405/1-1 *et seq.* (West 2010); 750 ILCS 50/0.01 *et seq.* (West 2010). When a court exercises its authority, it must proceed within the confines of those laws. *In re E.B.*, 231 Ill. 2d 459, 464 (2008).

¶ 28 Under the Juvenile Court Act, parental rights cannot be terminated absent the parent's consent unless the court first determines, by clear and convincing evidence, that the parent is an "unfit person" as defined by section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2010)). 705 ILCS 405/2-29(2) (West 2010). "Involuntary termination of a parent's rights

without a prior showing of unfitness would, in fact, be unconstitutional." *In re Gwynne P.*, 215 Ill. 2d at 354; *In re Petition of Kirchner*, 164 Ill. 2d 468, 501 (1995).

¶ 29    Each case concerning parental fitness is *sui generis*, unique unto itself. *In re M.I.*, 2016 IL 120232, ¶ 21. As a general rule, a trial court's finding that a parent is unfit under section 1(D) of the Adoption Act will not be reversed on appeal unless that finding is against the manifest weight of the evidence. *Id.* A trial court's decision regarding a parent's fitness is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent. *Id.*

¶ 30    The circuit court's finding of unfitness in this case was premised exclusively on section 1(D)(i) of the Adoption Act, under which a parent is presumptively deemed "depraved" and therefore unfit, if it has been established by clear and convincing evidence that the parent has committed certain crimes or a combination of crimes. See *In re Gwynne P.*, 215 Ill. 2d at 249. More specifically, the circuit court found Floyd F. "depraved" based on the portion of section 1(D)(i) that provides:

> "There is a rebuttable presumption that a parent is depraved if the parent has been criminally convicted of at least 3 felonies under the laws of this State or any other state, or under federal law, or the criminal laws of any United States territory; and at least one of these convictions took place within 5 years of the filing of the petition or motion seeking termination of parental rights." 750 ILCS 50/1(D)(i) (West 2010).

¶ 31    The problem, as Floyd F.'s trial counsel suggested and the appellate court recognized, is that one of the three felony convictions on which DCFS's claim of depravity depended, the conviction from 2008 for aggravated unlawful use of a weapon, was based on the very statute we struck down as unconstitutional in *Aguilar*. The dispositive question in this appeal, and the one we must therefore now address, is whether the trial court could rely on such a constitutionally invalid conviction in determining whether DCFS had met its burden of establishing that Floyd F. was unfit within the meaning of the depravity provisions of section 1(D)(i) of the Adoption Act and, on that basis, terminate his constitutionally protected parental rights. The answer to that question, as the appellate court correctly concluded, is that it could not.

¶ 32    In *Aguilar*, we held that section 24-1.6(a)(1), (a)(3)(A), (d) of the Criminal Code of 1961 (720 ILCS 5/24-1.6(a)(1), (a)(3)(A), (d) (West 2008)), specifically the offense of aggravated unlawful use of a weapon, was unconstitutional on its face under the second amendment to the United States Constitution. 2013 IL 112116, ¶ 22; see also *People v. Burns*, 2015 IL 117387. There is no question that Floyd F.'s 2008 conviction was based on that facially unconstitutional statute. Although the certified copies of Floyd F.'s criminal convictions included in the original record in this case did not reflect the specific provision of the statute under which he was convicted, the appellate court recognized the importance of determining whether Floyd F.'s conviction was, in fact, based on the particular subsection of the statute found to be facially unconstitutional in *Aguilar*. The appellate court therefore, *sua sponte*, took judicial notice of court records from Floyd F.'s 2008 prosecution in the circuit court of Will County. 2017 IL App (3d) 160277, ¶ 17. Doing so was well within the appellate court's authority. See *Metropolitan Life Insurance Co. v. American National Bank & Trust Co.*, 288 Ill. App. 3d 760, 764 (1997); *NBD Highland Park Bank, N.A. v. Wien*, 251 Ill. App. 3d 512 (1993); *State Farm Fire & Casualty Co. v. Watts Regulator Co.*, 2016 IL App (2d) 160275, ¶ 40. Those records confirmed that Floyd F.'s 2008 conviction was based on section

24-1.6(a)(1), (a)(3)(A), (d) of the Criminal Code of 1961 (720 ILCS 5/24-1.6(a)(1), (a)(3)(A), (d) (West 2010)).

¶ 33    Because section 24-1.6(a)(1), (a)(3)(A), (d) is facially unconstitutional under the second amendment to the United States Constitution (*Aguilar*, 2013 IL 112116, ¶ 22; *Burns*, 2015 IL 117387, ¶ 21; *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012)) and the existence of Floyd F.'s conviction under that facially unconstitutional statute was necessary to the trial court's determination that he was depraved within the meaning of the Adoption Act, Floyd F.'s conviction under the statute must be vacated, and the circuit court's finding of depravity must be reversed. The reason for that is grounded in both federal constitutional law, which we are required to follow, and the law of this state.

¶ 34    The United States Supreme Court has identified two basic paths for analyzing the consequences of a constitutionally deficient criminal conviction. Which path a court must follow depends, in the first instance, on the reason the conviction is unconstitutional. Where the conviction is found to have resulted from constitutionally deficient *procedures*, that determination does not negate the possibility that the defendant is actually culpable for the underlying offense and could have been convicted of that offense had the constitutionally mandated standards been followed.

¶ 35    In such cases, the conviction may still be used for some purposes, though not for others. The general rule is that new rules of procedure do not apply retroactively and therefore have no effect on prior convictions. Retroactive effect is given only in a small set of cases where the decision by which the conviction was rendered unconstitutional announced a watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the proceeding. See *Schriro v. Summerlin*, 542 U.S. 348, 351-52 (2004). Even in cases where such a watershed rule is involved, however, there are circumstances in which the conviction obtained in violation of that rule may still be given recognition and effect in later criminal prosecutions. *Lewis v. United States*, 445 U.S. 55 (1980), discussed more fully later in this opinion, elucidates this principle.

¶ 36    The second basic path identified by the United States Supreme Court, exemplified by cases such as *Montgomery v. Louisiana*, 577 U.S. ___, 136 S. Ct. 718 (2016), and *Class v. United States*, 583 U.S. ___, 138 S. Ct. 798 (2018), applies where a conviction is invalid because it was based on a statute found to be unconstitutional on its face. To hold that a statute is facially unconstitutional means that the conduct it proscribed was beyond the power of the state to punish. *Montgomery*, 577 U.S. ___, 136 S. Ct. 718. It was not, is not, and could never be a crime. *Ex parte Siebold*, 100 U.S. 371, 376 (1879). That being the case, the conviction must be treated by the courts as if it did not exist, and it cannot be used for any purpose under any circumstances. *Id.* This is the line of authority by which the present case is governed.

¶ 37    The principles underlying this second path are not new. They are deeply embedded in our jurisprudence. See 16A Am. Jur. 2d *Constitutional Law* § 195 (1998). More than a century ago, the United States Supreme Court held that where, as here, the statute on which a criminal conviction is based has been declared facially invalid under the United States Constitution, the conviction must be vacated and cannot be given any force or effect. *Ex parte Siebold*, 100 U.S. at 376-77. "An unconstitutional law is void, and is as no law." *Id.* at 376. Thus, "[a]n offence created by it is not a crime," and "[a] conviction under it is not merely erroneous, but is illegal and void." *Id.*; *Ex parte Royall*, 117 U.S. 241, 248 (1886) ("it is clear that if the [Virginia]

statute under which [the defendant] was indicted be repugnant to the constitution, the prosecution against him has nothing upon which to rest, and the entire proceeding against him is a nullity").

¶ 38 The United States Supreme Court recently reaffirmed these principles in *Montgomery*, 577 U.S. ___, 136 S. Ct. 718. In accordance with long-established precedent, the court held in *Montgomery* that where, as here, a conviction is based on an unconstitutional law, that conviction is not only erroneous but is illegal and void and cannot be the legal cause of punishment. *Id.* at ___, 136 S. Ct. at 730. Indeed, for a state to enforce a proscription or penalty barred by the Constitution would itself be unlawful. *Id.* at ___, 136 S. Ct. at 730. Accordingly, not only must the State stop charging defendants under the invalidated law in future prosecutions, it is precluded from using past convictions under the facially unconstitutional law in any subsequent proceedings " 'to support guilt or enhance punishment for another offense,' " for doing so would be tantamount to forcing the defendant to suffer anew the deprivation of his constitutional rights. *United States v. Bryant*, 579 U.S. ___, ___, 136 S. Ct. 1954, 1956-57 (2016) (quoting *Burgett v. Texas*, 389 U.S. 109, 115 (1967), and holding that convictions obtained in violation of the sixth amendment are deemed void and may not be used in subsequent prosecutions). Undeniably, the state is barred from giving *any* legal recognition to a conviction based on a facially unconstitutional statute. That is so even if the underlying statute is not invalidated until after the conviction becomes final. *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 730.

¶ 39 The explanation for this inheres in the nature of what it means for a statute to be declared facially unconstitutional. While legislative repeal of a statute may not invalidate convictions based on conduct occurring prior to the repeal (5 ILCS 70/4 (West 2010); *People v. Glisson*, 202 Ill. 2d 499, 507-08 (2002)), that is not the case where a statute is declared unconstitutional by the courts. As a matter of federal constitutional law, a judicial declaration that a criminal statute is facially invalid under the United States Constitution means that the statute was fatally infirm from the moment of its enactment and that the conduct it sanctioned was never a crime at all. *Ex parte Siebold*, 100 U.S. at 376. Accordingly, in contrast to situations where a conviction was obtained through a constitutionally deficient procedure, there is no possibility of guilt or criminal culpability. The underlying conduct was constitutionally immune from punishment. *United States v. United States Coin & Currency*, 401 U.S. 715, 724 (1971). While the text of the law may remain in the statute books, it is " 'in legal contemplation, as inoperative as though it had never been passed.' " *United States ex rel. Williams v. Preiser*, 497 F.2d 337, 339 (2d Cir. 1974) (quoting *Norton v. Shelby County*, 118 U.S. 425, 442 (1886)).

¶ 40 Put in other words, a judicial determination that a law is facially invalid under the Constitution of the United States means, as a matter of federal constitutional law, that the state had no authority and the courts never acquired jurisdiction to impose punishment under that law. *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 730-31. And because there was never authority or jurisdiction to impose the punishment in the first place, the United States Supreme Court has further held that "a court has no authority to leave in place a conviction or sentence that violates a substantive rule, regardless of whether the conviction or sentence became final before the rule was announced." *Id.* at ___, 136 S. Ct. at 731. "There is no grandfather clause that permits States to enforce punishments the Constitution forbids," the Court has explained. *Id.* at ___, 136 S. Ct. at 731. "To conclude otherwise would undercut the Constitution's substantive guarantees." *Id.* at ___, 136 S. Ct. at 731. When a court is confronted with a law

repugnant to the constitution, what it must do "is simply to *ignore* it" and "decide[ ] the case 'disregarding the [unconstitutional] law.' " (Emphasis omitted and in original.) *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 760 (1995) (Scalia, J., concurring, joined by Thomas, J.) (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 178 (1803)).

¶ 41    State courts are under a mandatory obligation to adhere to this federal constitutional command. Under the supremacy clause of the federal constitution (U.S. Const., art. VI, cl. 2),

> " '[w]e are bound to follow the United States Supreme Court's interpretation of the Constitution of the United States.' *People v. Wagener*, 196 Ill. 2d 269, 287 (2001). This means that when the Supreme Court adopts a particular framework for applying a federal constitutional provision, we are required to follow that framework, regardless of how other courts, including this one, may have approached the issue in other decisions. *People v. Hale*, 2013 IL 113140, ¶ 20." *People v. Hood*, 2016 IL 118581, ¶ 22.

Accordingly, because the United States Supreme Court has held that a statute that is facially invalid under the constitution is void and unenforceable and "is as no law," the supremacy clause requires this court to reach the same conclusion. As the highest court of one of our sister states has observed, "[i]t is fundamental that by virtue of the Supremacy Clause, the State courts are bound by the decisions of the Supreme Court with respect to the federal Constitution and federal law, and must adhere to extant Supreme Court jurisprudence. U.S. Const. art. VI, cl. 2; *Chesapeake & O. Ry. Co. v. Martin*, 283 U.S. 209, 221, 51 S.Ct. 453, 75 L.Ed. 983 (1931)." *Council 13, American Federation of State, County & Municipal Employees v. Rendell*, 986 A.2d 63, 77 (Pa. 2009); see also *People v. Hope*, 184 Ill. 2d 39, 44 (1998) ("state courts are required to follow United States Supreme Court precedent where the result therein is mandated by the Constitution of the United States" (citing *People v. Gillespie*, 136 Ill. 2d 496, 502 (1990))). "States may not disregard a controlling, constitutional command in their own courts." *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 727; see also *Reynoldsville Casket Co.*, 514 U.S. at 760 (Scalia, J., concurring, joined by Thomas, J.) (where Ohio statute violated federal constitution, Ohio courts were bound to ignore it).

¶ 42    We thus have an affirmative duty to invalidate Floyd F.'s AUUW conviction and to treat the statute on which it was based as having never existed. Because the finding of depravity depended on a void conviction based on a constitutionally nonexistent statute, we must, in turn, reverse that finding, for without that conviction the State would have failed to meet its burden of showing by clear and convincing evidence that Floyd F. was depraved and therefore unfit under section 1(D)(i) of the Adoption Act (750 ILCS 50/1(D)(i) (West 2010)). Absent that conviction, the statutory presumption of depravity under section 1(D)(i) would not even have been triggered.

¶ 43    There is no merit to the argument that this proceeding is not an appropriate forum for Floyd F. to invoke *Aguilar* to establish that his 2008 AUUW conviction was invalid because it was based on a statute that is facially invalid under the second amendment. Our court has held that a judgment based on a statute that is facially unconstitutional is void. *People v. Price*, 2016 IL 118613, ¶ 31. Illinois law permits void judgments to be " 'impeached at any time in any proceeding whenever a right is asserted by reason of that judgment, and it is immaterial *** whether or not the time for review by appeal has expired.' " *People v. Meyerowitz*, 61 Ill. 2d 200, 206 (1975) (quoting *Reynolds v. Burns*, 20 Ill. 2d 179, 192 (1960)); *R.W. Sawant & Co. v.*

*Allied Programs Corp.*, 111 Ill. 2d 304, 309 (1986) (a void judgment, order, or decree "may be attacked at any time or in any court, either directly or collaterally" (emphasis omitted)). Further, challenges to void judgments are not subject to forfeiture or other procedural restraints. *Price*, 2016 IL 118613, ¶ 30. Because Illinois state courts would thus afford the opportunity for a collateral challenge to the validity of a judgment in cases such as this, we cannot refuse to give retroactive effect to a substantive federal constitutional right that is dispositive of the challenge advanced by Floyd F. here. The supremacy clause of the United States Constitution prohibits it. *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 731-32.

¶ 44    Following the same established principles applied in *Montgomery*, other state courts have reached the same conclusion under similar circumstances. See, *e.g.*, *People v. Germany*, 674 P.2d 345, 349 (Colo. 1983) (*en banc*), where the Supreme Court of Colorado invalidated a provision of state law that imposed a time bar on challenges to unconstitutional convictions, including convictions based on statutes declared unconstitutional after the conviction was imposed. *Id.* at 352. In reaching this result, the court reasoned that a contrary conclusion would contravene "the long-standing rule that a conviction under an unconstitutional law is void." *Id.* "[I]t is axiomatic," held the court, "that a conviction imposed in violation of a basic constitutional right may not be used to support guilt or to enhance punishment," a precept that emanates from "the principle that unconstitutional convictions, in addition to being of suspect reliability, abridge the very charter from which the government draws its authority to prosecute anyone." *Id.* at 349. "[T]he implementation of an accused's right to challenge governmental use of an unconstitutional conviction is no more than one aspect of the duty of the judiciary to uphold the constitution in all judicial proceedings." *Id.* at 350. And while "the state has a legitimate interest in preserving the finality of criminal convictions," "the state's interest in finality is not a justification for permitting unconstitutional convictions to stand." *Id.*

¶ 45    To similar effect is *Keeny v. Fitch*, 458 S.W.3d 838 (Mo. Ct. App. 2015). In that case, the defendant was required by state law to register as a sex offender after pleading guilty more than 25 years earlier to a sexual offense based on consensual conduct that was subsequently found by the United States Supreme Court in *Lawrence v. Texas*, 539 U.S. 558 (2003), to be constitutionally protected. *Keeny*, 458 S.W.3d 838. The defendant claimed that he should no longer be required to register as a sex offender. *Id.* By the time the United States Supreme Court declared that his conduct could not be made a crime, however, there was no longer any mechanism under Missouri state law for him to withdraw his plea. *Id.* The Missouri Court of Appeals nevertheless granted him relief. *Id.* It held that he was entitled to a declaratory judgment that he was no longer required to register as a sex offender and ordered the state to remove his name and all other registration information about him from the state's sex offender registry. *Id.*

¶ 46    *State v. Smith*, 2016-Ohio-3521, 68 N.E.2d 114 (Ct. App.), a recent Ohio case decided after *Montgomery*, is also in accord. Similar to *Keeny*, 458 S.W.3d 838, the case involved a defendant who was under an ongoing duty to register as a child-victim-oriented offender following his release from confinement for convictions for child-enticement offenses under Ohio law. *Smith*, 2016-Ohio-3521, 68 N.E.2d 114. The convictions were imposed in 2004, no appeal was taken, and defendant was released from confinement in 2007. *Id.* Seven years later, in an unrelated case, the Ohio Supreme Court determined that the statute under which the defendant had been convicted was facially unconstitutional under the first amendment to the United States Constitution. *Id.* Based on that ruling, the defendant filed motions to vacate his

2004 conviction. *Id.* The trial court rejected defendant's claims, but the Ohio Court of Appeals reversed. *Id.* After recognizing that the effect of the 2014 ruling was to leave defendant convicted under an unconstitutional statute, the court turned to the question of its jurisdiction to grant relief. *Id.* It noted that the defendant had not specified a particular statute or rule on which relief could be granted and concluded that none of the normal procedural avenues under Ohio law for appeal or collateral attack remained available to him. *Id.* ¶ 15. The court held, however, that under the United States Supreme Court's decisions in *Siebold* and *Montgomery*, as well as under Ohio law, the effect of the Ohio Supreme Court's 2014 declaration that the statute under which defendant had been convicted was facially unconstitutional under the first amendment of the United States Constitution was to render defendant's convictions void. *Id.* ¶ 29. Under *Montgomery* and related Supreme Court precedent, the court was obligated to give the 2014 state court ruling full retroactive effect. *Id.* ¶¶ 22-29. Because in Ohio, as in Illinois, "a court always has jurisdiction to correct a void judgment" (*id.* ¶ 20), it reversed the trial court's judgment and remanded with instructions to vacate defendant's conviction and ordered "that he be discharged from further prosecution for those offenses," a command that would relieve defendant from any ongoing obligation to register as a child-victim-oriented offender under Ohio law. *Id.* ¶ 30.

¶ 47 Application of these principles by federal courts has likewise afforded individuals relief when they have found no recourse in state courts. In *United States ex rel. Williams*, 497 F.2d 337, for example, the United States Court of Appeals for the Second Circuit affirmed the grant of *habeas corpus* relief to a licensed physician who had been convicted of manslaughter under state law and sentenced to prison for performing a nonnegligent, consensual medical procedure eight years before the United States Supreme Court ruled that physicians had a constitutional right to perform the procedure without fear of prosecution. The court held that because the states were forbidden by the constitution from regulating such procedures, the state law for which the physician had been prosecuted was " 'in legal contemplation, as inoperative as though it had never been passed.' [Citation.]" *Id.* at 339. It necessarily followed that the physician could no longer remain deprived of liberty based on that law. "This declaration of retroactive invalidity," concluded the court, "assures the supremacy of the newly recognized substantive right over a state's power to punish." *Id.*

¶ 48 Moreover, while the United States Supreme Court has refused to consider claims on *habeas corpus* that an indictment did not state an offense (*Ex parte Parks*, 93 U.S. 18 (1876)), that an individual had been placed in double jeopardy for the same offense (*Ex parte Bigelow*, 113 U.S. 328 (1885)), or that an individual had been compelled to incriminate himself (*In re Moran*, 203 U.S. 105 (1906)), the Court has consistently and without exception recognized an obligation to afford relief to a person convicted under an unconstitutional (void) statute (*Ex parte Siebold*, 100 U.S. 371), and it continues to do so, as *Montgomery* illustrates.

¶ 49 Indeed, the United States Supreme Court reaffirmed the foregoing principles just this year in *Class*, 583 U.S. ___, 138 S. Ct. 798. There, a defendant who had been convicted of unlawful possession of a firearm on the grounds of the United States Capitol sought to challenge the constitutionality of the statute under which he was charged on the theory that it violated the second amendment and the due process clause. *Class*, 583 U.S. ___, 138 S. Ct. 798. The government objected, arguing that the defendant should be barred from raising his constitutional challenge because he had pled guilty to the offense and because he had not followed procedures set forth in the Federal Rules of Criminal Procedure. *Id.* The Supreme

- 13 -

Court rejected these arguments. *Id.* Following its prior precedent, it held that because defendant's constitutional challenge, like the challenge asserted by Floyd F. here, went to the power of the government to criminalize the conduct at issue and, if successful, would have meant that the offense in question was one that the government had no constitutional authority to prosecute, defendant had the right to raise that challenge on direct appeal. *Id.* Although *Class* involves a guilty plea, the same underlying principle applies. Defendants convicted under a facially unconstitutional statute may challenge the conviction at any time, even after a guilty plea, because the state or government had no power to impose the conviction to begin with.

¶ 50   Likewise, Illinois law mandates Floyd F.'s 2008 conviction be vacated and the finding of depravity reversed. Although the terminology may differ in certain respects, Illinois follows the same basic approach as the United States Supreme Court when dealing with the consequences of a facially unconstitutional statute. When a statute is found to be facially unconstitutional in Illinois, it is said to be void *ab initio*; that is, it is as if the law had never been passed (*McFadden*, 2016 IL 117424, ¶ 17; *People v. Holmes*, 2017 IL 120407, ¶¶ 12-13; *Dennis Thompson*, 2015 IL 118151, ¶ 32; *People v. Carrera*, 203 Ill. 2d 1, 14 (2002); *Hill v. Cowan*, 202 Ill. 2d 151, 156 (2002); *People v. Gersch*, 135 Ill. 2d 384, 399 (1990)) and never existed (*People v. Tellez-Valencia*, 188 Ill. 2d 523, 526 (1999)). Such laws are "infirm from the moment of [their] enactment and, therefore, [are] unenforceable." *McFadden*, 2016 IL 117424, ¶ 17; *Holmes*, 2017 IL 120407, ¶ 12; *Dennis Thompson*, 2015 IL 118151, ¶ 32.

¶ 51   We apply these principles strictly where a defendant's constitutional rights are in need of vindication. *Perlstein v. Wolk*, 218 Ill. 2d 448, 466 (2006). "[W]here a statute is violative of constitutional guarantees, we have a duty not only to declare such a legislative act void, but also to correct the wrongs wrought through such an act ***." *Gersch*, 135 Ill. 2d at 399. As we recently noted in *McFadden*, to refuse to give a decision declaring a statute facially unconstitutional full retroactive effect would forever prevent those injured under the unconstitutional legislative act from receiving a remedy for deprivation of a guaranteed right, a result that " 'would clearly offend all sense of due process.' " *McFadden*, 2016 IL 117424, ¶ 18 (quoting *Gersch*, 135 Ill. 2d at 397).

¶ 52   While a conviction and sentence based on a facially unconstitutional statute have no legal force or effect, and can be given none, their nullification is not self-executing. *Id.* Judicial action is necessary. As we recently said in *McFadden*, "[i]t is axiomatic that no judgment, including a judgment of conviction, is deemed vacated until a court with reviewing authority has so declared." *Id.* ¶ 31. The voidness of a conviction and sentence based on a facially unconstitutional statute may be addressed either on direct review of the conviction and sentence or in a collateral proceeding. *Id.*

¶ 53   Floyd F. did not challenge the validity of his 2008 AUUW conviction through direct appeal. The time for pursuing such a direct appeal had expired five years before we declared the statutory basis for that conviction invalid under the second amendment in *Aguilar*, 2013 IL 112116. A collateral challenge was therefore his only option. Illinois law provides two statutory options for collaterally attacking an invalid judgment in a criminal case. The first is a postconviction petition filed pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2014)), and the second is a petition filed pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2014)). While Floyd F. has pursued a

- 14 -

postconviction petition in his 2011 criminal case claiming that his 2008 conviction was a nullity and could not serve as a basis for an armed habitual criminal charge, that petition is not before us, nor was it before the appellate court.

¶ 54    That, however, is of no consequence. Despite DCFS's contentions to the contrary, the foregoing options are not and have never been held to be the sole means for collaterally attacking the validity of a conviction premised on a facially invalid, and indisputably unenforceable, statute. *Malone v. Cosentino*, 99 Ill. 2d 29 (1983), cited by DCFS as support for a contrary conclusion, is inapposite. *Malone* was a class action in which the lead plaintiff sought to recover modest monetary penalties and fees he paid after pleading guilty to two traffic violations. *Id.* at 31. In contrast to Floyd F., the plaintiff in *Malone* did not take issue with the validity of his convictions. *Id.* His contention centered exclusively on the constitutionality of the statutes authorizing the penalties and fees he had been required to pay following those convictions. *Id.*

¶ 55    In rejecting the plaintiff's challenge in *Malone*, our court held that he was barred from collaterally challenging the penalties and fees in what it described as an "*ad hoc*" proceeding because he had neither appealed the underlying judgment nor sought collateral review in one of the "established forms of collateral proceedings," and the modest fees and assessments involved did not involve a substantial denial of constitutional rights. *Id.* at 33-35. We took care, however, to contrast the situation with *People v. Warr*, 54 Ill. 2d 487, 491-93 (1973), where defendants, who had been convicted of misdemeanors, brought suit to challenge their convictions on the grounds that the convictions had been obtained in violation of constitutional protections mandated by controlling United States Supreme Court precedent, and with *McCabe v. Burgess*, 75 Ill. 2d 457 (1979), where defendant sought to use a civil action to expunge constitutionally infirm convictions from his criminal record and the criminal records of other individuals and to recover fines paid in connection with those unconstitutional convictions, and *Meyerowitz*, 61 Ill. 2d 200 (1975), discussed more fully below. *Malone*, 99 Ill. 2d at 34-35. In such circumstances, where there was a substantial denial of constitutional rights, we held that allowing nonstatutory remedies would be justified. *Id.* at 35. This, of course, is just such a case. Here, there is an unconstitutional conviction on Floyd F.'s record. Further, Floyd F. has alleged a substantial denial of not only his second amendment rights but also his right to rear his child, a fundamental liberty interest. *Malone* thus refutes rather than supports DCFS's position.

¶ 56    *Meyerowitz*, 61 Ill. 2d 200, cited by this court in *Malone*, underscores the lack of merit in DCFS's position. In *Meyerowitz*, we considered whether defendants may properly attack the judgments of conviction in their motions to terminate probation. *Id.* In holding that they may, we reiterated "that considerations of justice and fairness require that an accused who asserts a substantial denial of his constitutional rights in the proceedings in which he was convicted be afforded a procedure by which the challenged proceedings may be reviewed." *Id.* at 205. Accordingly, where a person has been convicted under an unconstitutional statute, he or she may obtain relief from any court that otherwise has jurisdiction. The person is not restricted to specific statutory methods for collaterally attacking a judgment. *Id.* at 206. And it does not matter that the time for direct appeal may have passed. " 'A void judgment can be impeached at any time in any proceeding whenever a right is asserted by reason of that judgment, and it is immaterial, in a consideration of the validity of the judgment, whether or not the time for review by appeal has expired.' " *Id.* (quoting *Reynolds*, 20 Ill. 2d at 192).

- 15 -

¶ 57        Simply put, under Illinois law, there is no fixed procedural mechanism or forum, nor is there any temporal limitation governing when a void *ab initio* challenge may be asserted. See *Ernest Thompson*, 209 Ill. 2d at 25. Under our precedent, it is sufficient if a person subject to a conviction premised on a facially invalid statute raises his or her challenge through an appropriate pleading in a court possessing jurisdiction over the parties and the case. See *McFadden*, 2016 IL 117424, ¶ 21. Indeed, if the constitutional infirmity is put in issue during a proceeding that is pending before a court, the court has an independent duty to vacate the void judgment and may do so *sua sponte*. *Ernest Thompson*, 209 Ill. 2d at 27; *Meyerowitz*, 61 Ill. 2d 200. A void order may be attacked at any time in any court. *Ernest Thompson*, 209 Ill. 2d at 27. Such challenges are not subject to forfeiture (*People v. Relerford*, 2017 IL 121094, ¶ 29 n.2) or any other ordinary procedural bar (*Dennis Thompson*, 2015 IL 118151, ¶¶ 30-33).

¶ 58        Moreover, it is not a valid objection that permitting parents such as Floyd F. to challenge their constitutionally invalid convictions in termination proceedings will adversely impact administration of the criminal justice system. Establishing that a prior conviction is invalid because it was based on a facially unconstitutional statute requires no elaborate fact-finding or hearing. The statutory basis for the conviction can be readily ascertained by retrieval and review of official court records, of which a subsequent court can take judicial notice (see *People v. Williams*, 149 Ill. 2d 467, 492 (1992)), as happened in this case, and the fact that the statute has been found unconstitutional can be confirmed by the case law. As for concerns over the finality of judgments, these are of little consequence as a practical matter because penal statutes are rarely found facially invalid and, when they are, defendants have every incentive to raise the defect at the earliest possible, practical moment. Moreover, the particular statute on which Floyd F.'s challenged 2008 conviction was based was declared unconstitutional five years ago, ending further prosecutions under that statute and limiting the number of convictions that will have to be set aside going forward.

¶ 59        In any event, to the extent that the administration of justice may be inconvenienced by the need to take corrective action, such concerns cannot justify leaving in place and giving further effect to a criminal conviction based on a facially unconstitutional statute. While the State has a weighty interest in the finality of convictions and sentences, the United States Supreme Court has made it clear that whatever administrative, penal, or other policy concerns might be taken into account in other circumstances, if the State were required to revisit convictions that had been obtained in conformity to then-existing constitutional standards, such concerns have absolutely no application where, as here, a statute has been declared facially invalid under a substantive rule of constitutional law, "for no resources marshaled by a State could preserve a conviction or sentence that the Constitution deprives the State of power to impose." *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 732 (" 'There is little societal interest in permitting the criminal process to rest at a point where it ought properly never to repose' " (quoting *United States v. Mackey*, 401 U.S. 667, 693 (1971) (Harlan, J., concurring in part and dissenting in part))). The procedural objections raised by DCFS and N.G. to Floyd F.'s challenge to his void 2008 AUUW conviction were therefore meritless and properly rejected by the appellate court.

¶ 60        The appellate court was likewise correct to reject the contention by DCFS that under this court's decision in *McFadden*, 2016 IL 117424, Floyd F.'s constitutionally invalid (and therefore legally nonexistent) firearms conviction could still be used by the State to meet its burden of establishing that Floyd F. was "depraved" within the meaning of the Adoption Act

so that his parental rights could be extinguished. In making that argument, DCFS was asking the court to hold, in effect, that a person's fundamental rights to parenthood may be terminated based on conduct protected by the second amendment and therefore beyond the power of the state to punish. That such is not the case should be self-evident. It can certainly find no support in *McFadden*.

¶ 61    *McFadden* was a criminal proceeding involving the validity of a defendant's conviction for unlawful use of a weapon by a felon (UUWF). *Id.* The state's contention was that under the governing provisions of Illinois's criminal code, the defendant in that case was eligible to be convicted for UUWF based on a prior conviction for aggravated unlawful use of a weapon (AUUW). *Id.* The defendant, however, argued that, because the AUUW statute had been declared facially unconstitutional in *Aguilar*, his conviction under that statute should not have been be taken into account for purposes of determining whether his subsequent offense constituted UUWF. *Id.* ¶ 16.

¶ 62    The appellate court agreed, but this court reversed and reinstated the UUWF conviction. *Id.* ¶ 27. Although we reaffirmed long-standing principles that a facially unconstitutional statute is void from the moment of its enactment and unenforceable, that a declaration that a statute is facially invalid must be given full retroactive effect, and that a conviction based on such a statute cannot stand, we held, based on the language of the UUWF statute, that where a defendant has not taken affirmative action to have a court set aside the initial conviction and therefore still has an extant, undisturbed felony conviction on his record at the time he engaged in the conduct on which the subsequent UUWF prosecution was predicated, the elements of the UUWF statute are satisfied and the UUWF conviction may stand, regardless of whether the initial conviction might be subject to vacatur later on the grounds that it was unconstitutional. *Id.* Underlying this conclusion was a concern that unless felons who had previously been convicted of a firearms offense were required to formally clear their prior records before obtaining firearms, they might resort to self-help and acquire firearms again in the hope that, after the fact, they could defend against any subsequent firearms charges by having their earlier conviction set aside. *Id.* ¶ 30. Such an outcome, in our view, would undermine the UUWF statute's purpose of protecting the public from dangerous persons who are seeking to obtain firearms. *Id.* ¶¶ 29-30.

¶ 63    Because Floyd F. did not move to nullify his 2008 AUUW conviction prior to initiation of the parental rights termination proceedings at issue in this case, DCFS contends that while the conviction is constitutionally infirm, it may likewise be used, under the same reasoning we employed in *McFadden*, to establish that he was a three-time felon and thus "depraved" within the meaning of the Adoption Act. We agree with the appellate court that DCFS's argument is not well taken.

¶ 64    As a preliminary matter, a careful reading of *McFadden* reveals evidentiary and procedural differences that separate that case from this one. While our decision in *Aguilar* was raised in both cases, *Aguilar* did not invalidate the entire AUUW statute, only part of it, namely, section 24-1.6(A)(1), (a)(3)(A) of the Criminal Code of 1961 (720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2008)). In contrast to the matter before us here, there was no indication in the record in *McFadden* as to either the particular provision of the AUUW statute to which the defendant

had pled guilty or the factual basis for the plea. *McFadden*, 2016 IL 117424, ¶¶ 4, 32-33.[2] We therefore had no basis for concluding that the defendant's prior conviction was, in fact, premised on section 24-1.6(A)(1), (a)(3)(A) (720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2008)), and we took care to specifically point out that we were not doing that. *McFadden*, 2016 IL 117424, ¶ 41. Without evidence that defendant had actually been convicted for violating that particular subsection, any claim that defendant's subsequent UUWF conviction was premised on a void prior conviction was, of course, completely untenable.

¶ 65     No such problem is present in this case. In contrast to *McFadden*, it is clear from the supplemented appellate record that Floyd F.'s AUUW conviction was based on exactly the same section of the statute we found facially unconstitutional in *Aguilar*. *Id.* ¶¶ 25, 28. We can therefore say with certainty that the trial court's finding of unfitness here was premised on a conviction that has no legal force or effect.

¶ 66     We note, moreover, that while the defendant in *McFadden* sought to set aside his subsequent UUWF conviction on the grounds that his prior AUUW conviction should not be given legal recognition under *Aguilar*, he never filed any pleadings to actually vacate that prior AUUW conviction and did not request that the prior conviction be vacated in the case then under review. *Id.* ¶ 21. That was not true of Floyd F. Unlike the defendant in *McFadden*, he not only challenged the use of the prior AUUW conviction in this subsequent proceeding, he sought to have the prior conviction itself nullified and vacated. 2017 IL App (3d) 160277, ¶ 25. As our previous discussion makes clear, using a collateral proceeding to attack a conviction based on a facially unconstitutional statute, as Floyd F. has done here, is clearly permissible.

¶ 67     *McFadden* is also problematic because of the line of United States Supreme Court authority on which it is based. In upholding the use of the defendant's prior firearms conviction to establish an element of the subsequent firearms offense for which he had been convicted, our opinion in *McFadden* neither considered nor addressed *Montgomery* or the numerous earlier United States Supreme Court cases which have consistently held that convictions based on facially unconstitutional statutes are void, can be given no effect, and must be treated by the courts as if they do not exist. No mention of *Montgomery* is made in the dissent either. While the decision was referenced in a motion filed by the defendant for leave to file additional authority and was argued in his petition for rehearing, it triggered no analysis by the majority or the dissenters in our court, and the defendant's petition for rehearing was ultimately denied without comment. Because a judicial opinion, like a judgment, is authority only for what is actually decided in the case (*Board of Governors of State Colleges & Universities for Chicago State University v. Illinois Fair Employment Practices Comm'n*, 78 Ill. 2d 143, 149 (1979); *Spring Hill Cemetery of Danville v. Ryan*, 20 Ill. 2d 608, 619 (1960)), *McFadden* cannot be read as expressing any view by this court as to the implications of *Montgomery* for the

---

[2] In *McFadden*, we stated that "[a]lthough for purposes of this appeal, the State does not dispute that defendant's 2002 conviction is premised on an unconstitutional statute, the record does not confirm defendant's assertion. The indictment for the 2008 UUW by a felon offense does not identify the specific nature of the 2002 predicate AUUW offense under which defendant pleaded guilty. Rather, it alleges that defendant had a felony conviction for '[AUUW] under case number 02CR-30903.' " *McFadden*, 2016 IL 117424, ¶ 32. We went on to make clear that "the record does not affirmatively reflect that defendant pleaded guilty under section 24-1.6(a)(1), (a)(3)(A), the only section held unconstitutional in *Aguilar*." *Id.* ¶ 33.

circumstances present in that case. Suggestions to the contrary by our appellate court (see, *e.g.*, *People v. Smith*, 2017 IL App (1st) 151643, ¶ 18; *People v. Spivey*, 2017 IL App (1st) 123563, ¶ 14) are incorrect and have no basis in our case law regarding the interpretation of judicial precedent.

¶ 68 What *is* clear from the discussion in *McFadden* is that our decision was based, instead, squarely on the United States Supreme Court's decision in *Lewis*, 445 U.S. 55 (1980). At issue in *Lewis* was whether a defendant's extant prior felony conviction, which was subject to collateral attack on the grounds that the defendant had been denied his right to counsel pursuant to *Gideon v. Wainwright*, 372 U.S. 335 (1963), could be used as the predicate for a subsequent conviction under section 1202(a)(1), as amended, of Title VII of the Omnibus Crime Control and Safe Streets Act of 1968 (18 U.S.C.A. § 1202(a)(1) (1976)), which barred possession of firearms by any person who "has been convicted by a court of the United States or of a State *** of a felony." (Internal quotation marks omitted.) *Lewis*, 445 U.S. at 60.

¶ 69 In answering this question in the affirmative, the Supreme Court examined the legislative history of section 1202(a)(1) as well as the overall statutory framework of which it was a part and concluded that its prohibitions were triggered by any felony conviction, not merely "valid" convictions. *Id.* Accordingly, for purposes of that statute, it did not matter that the predicate felony might be subject to collateral attack on the grounds that it was obtained in violation of a defendant's right to counsel. *Id.* So long as the defendant's conviction for that felony remained undisturbed through court challenge or pardon at the time of the conduct giving rise to the subsequent felony (possession of a firearm), it could be used to establish an element of the second offense. *Id.* at 62-65. A contrary conclusion, in the Court's view, would be at odds with the statutory scheme enacted by Congress "in response to the precipitous rise in political assassinations, riots, and other violent crimes involving firearms, that occurred in this country in the 1960's," under which even mere indictment was a disabling circumstance, and which was designed to be "a sweeping prophylaxis *** against misuse of firearms." *Id.* at 63.

¶ 70 While the Court acknowledged its precedent holding that uncounseled convictions obtained in violation of the sixth amendment under *Gideon* could not be used to enhance punishment under a state's recidivist statute (*Burgett*, 389 U.S. 109) or considered by a court in sentencing a defendant after a subsequent conviction (*United States v. Tucker*, 404 U.S. 443 (1972)) or to impeach the general credibility of the defendant in a subsequent prosecution (*Loper v. Beto*, 405 U.S. 473 (1972); *Lewis*, 445 U.S. at 60), it distinguished those situations on the grounds that in each instance, the constitutional defect affected the reliability of the prior conviction. In *Lewis*, by contrast, the focus of the federal gun laws was "not on reliability, but on the mere fact of conviction, or even indictment, in order to keep firearms away from potentially dangerous persons." *Lewis*, 445 U.S. at 67. The court also found it significant that the sanction imposed by the federal statute could not be said to " 'support guilt or enhance punishment' " because that sanction "attaches immediately upon the defendant's first conviction" and not, as in *Burgett*, only after the fact of the second conviction. *Id.* (quoting *Burgett*, 389 U.S. at 115); see Deborah S. Prutzman, *Prior Convictions and the Gun Control Act of 1968*, 76 Colum. L. Rev. 326, 339 (1976).

¶ 71 In *McFadden*, we found that Illinois's UUWF statute was similar in purpose, structure, and operation to the federal firearms statute at issue in *Lewis* and that it was therefore appropriate to follow the same reasoning in construing and applying the Illinois law. In focusing on the

similarity of the statutory schemes, however, we failed to take into account a fundamental distinction between the constitutional flaws afflicting the two predicate offenses. In contrast to *McFadden*, *Lewis* did not present a situation where the prior offense was based on a facially unconstitutional statute that penalized conduct the state had no power to punish, and no second amendment concerns were at play (see *District of Columbia v. Heller*, 554 U.S. 570, 625 n.25 (2008)). The problem with the predicate conviction in *Lewis*, felony breaking and entering with intent to commit a misdemeanor imposed under Florida law by a Florida state court, was that it was subject to attack on the grounds that it was obtained through a constitutionally deficient *procedure*, specifically, a trial in which the defendant had been denied the right to counsel, a defect the defendant had failed to raise in any Florida state proceeding prior to being prosecuted for the federal offense then before the court.

¶ 72 The distinction is a critical one, as the United States Supreme Court's prior case law demonstrates and its decision in *Montgomery* confirms.

> "Procedural rules, in contrast, are designed to enhance the accuracy of a conviction or sentence by regulating 'the manner of determining the defendant's culpability.' [Citations.] Those rules 'merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise.' [Citation.] Even where procedural error has infected a trial, the resulting conviction or sentence may still be accurate; and, by extension, the defendant's continued confinement may still be lawful. For this reason, a trial conducted under a procedure found to be unconstitutional in a later case does not, as a general matter, have the automatic consequence of invalidating a defendant's conviction or sentence." *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 730.

Correspondingly, a conviction resulting from a trial in which the defendant was not afforded his or her right to counsel may be used for some purposes but not for others. *Lewis*, 445 U.S. at 66-67.

¶ 73 What our decision in *McFadden* did not take into account is that "[t]he same possibility of a valid result does not exist where a substantive rule has eliminated a State's power to proscribe the defendant's conduct or impose a given punishment," for " '[e]ven the use of impeccable factfinding procedures could not legitimate a verdict' where 'the conduct being penalized is constitutionally immune from punishment.' " *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 718 (quoting *United States Coin & Currency*, 401 U.S. at 724). Convictions resulting from a facially unconstitutional statute fall directly within this category. As discussed in detail earlier in this opinion, under *Montgomery* and the long line of cases on which *Montgomery* is based, such convictions are illegal and void, a nullity to which no court may give adverse effect in any proceeding against the defendant. They can give rise to no criminal status nor create any legal impediment, for the state had no authority, and the courts never acquired jurisdiction, to impose punishment under such laws to begin with. *Id.* at ___, 136 S. Ct. at 730-31.

¶ 74 Because of this, as we have explained, a facially unconstitutional statute and any conviction based on the statute must be treated as if they *never existed*. Because they are nonexistent, as a matter of federal constitutional law, and must therefore be ignored by the courts, using them against a defendant in any subsequent proceeding, civil or criminal, is not only conceptually impossible (if something has no legal existence how can it be given any legal recognition?) but would subvert the very constitutional protections that resulted in the

statute being found facially invalid to begin with and is incompatible with the United States Supreme Court's command that when, as under *Aguilar* and here, the conduct penalized by a statute is constitutionally immune from punishment, that determination must be given complete retroactive effect. *Id.* at ___, 136 S. Ct. at 731. Nothing in *Lewis* or any other United States Supreme Court decision of which we are aware supports a different conclusion.[3]

¶ 75     Our appellate court has struggled to reconcile *McFadden* with the line of United States Supreme Court authority culminating in *Montgomery*, often calling for a legislative solution in the absence of direction from our court. See *Smith*, 2017 IL App (1st) 151643, ¶ 15; *Spivey*, 2017 IL App (1st) 123563, ¶¶ 25-26 (Hyman, J., specially concurring); *People v. McGee*, 2017 IL App (1st) 141013-B, ¶ 33 (Hyman, J., specially concurring). The appellate court's unease is unsurprising and justified, especially given that the appellate court's findings took the proper analytical approach. See *People v. McGee*, 2016 IL App (1st) 141013; *People v. Cowart*, 2015 IL App (1st) 113085; *People v. Richardson*, 2015 IL App (1st) 130203; *People v. Ramsey*, 2015 IL App (1st) 131878; *People v. Faulkner*, 2015 IL App (1st) 132884; *People v. Claxton*, 2014 IL App (1st) 132681; *People v. Soto*, 2014 IL App (1st) 121937; *People v. Fields*, 2014 IL App (1st) 110311; *People v. Dunmore*, 2013 IL App (1st) 121170. Numerous unpublished orders follow the same analysis, indicating the appellate court no longer considered this analysis to be a new or conflict-ridden area of law. See Ill. S. Ct. R. 23(a)-(b) (eff. July 1, 2011); see also *People v. Marshall*, 2015 IL App (1st) 142461-U; *People v. Fryer*, 2015 IL App (1st) 141409-U; *People v. Speciale,* 2015 IL App (1st) 132376-U; *People v. Hernandez*, 2015 IL App (1st) 131871-U; *People v. Sterling*, 2015 IL App (1st) 130556-U; *People v. Spivey*, 2015 IL App (1st) 123563-U; *People v. Moton*, 2015 IL App (1st) 123385-U; *People v. Brown*, 2015 IL App (1st) 122651-U; *People v. Somerville*, 2014 IL App (1st) 132202-U; *People v. Carter*, 2014 IL App (1st) 123589-U; *People v. Smith*, 2015 IL App (1st) 123281-U; *People v. Dean*, 2015 IL App (1st) 122570-U; *People v. White*, 2014 IL App (1st) 122371-U;

---

[3]The fact that this is the only reasonable conclusion is emphasized by the number of defendants that have petitioned for *certiorari* following the denial of their petition for leave to appeal by this court. See *People v. McGee*, 2017 IL App (1st) 141013-B, *leave to appeal denied*, No. 122419 (Ill. Sept. 27, 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 935 (2018); *People v. Faulkner*, 2017 IL App (1st) 132884, *leave to appeal denied*, No. 122204 (Ill. Sept. 27, 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 1023 (2018); *People v. Perkins*, 2016 IL App (1st) 150889, *leave to appeal denied*, No. 121407 (Ill. Nov. 23, 2016), *cert. denied*, ___ U.S. ___, 137 S. Ct. 2294 (2017); *People v. Williams*, 2016 IL App (3d) 120840, *leave to appeal denied*, No. 121329 (Ill. Nov. 23, 2016), *cert. denied*, ___ U.S. ___, 137 S. Ct. 2294 (2017); *People v. Brown*, 2017 IL App (1st) 122651-U, *leave to appeal denied*, No. 122309 (Ill. Sept. 27, 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 936 (2018); *People v. White*, 2017 IL App (1st) 122371-UB, *leave to appeal denied*, No. 122423 (Ill. Sept. 27, 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 935 (2018); *People v. Fryer*, 2017 IL App (1st) 141409-U, *leave to appeal denied*, No. 122273 (Ill. Sept. 27, 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 1029 (2018); *People v. Carter*, 2017 IL App (1st) 123589-UB, *leave to appeal denied*, No. 121929 (Ill. May 24, 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 199 (2017); *People v. Williams*, 2016 IL App (1st) 143453-U, *leave to appeal denied*, No. 121482 (Ill. Jan. 25, 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 67 (2017); *People v. Powell*, 2015 IL App (1st) 140837-U, *leave to appeal denied*, No. 121758 (Ill. Mar. 29, 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 172 (2017). This is clearly becoming a pressurized issue. The further we extend *McFadden*'s reach, the less justification we have for following *Lewis* down the wrong analytical path.

*People v. Smith*, 2014 IL App (1st) 122370-U; *People v. Fields*, 2014 IL App (1st) 122012-U; *People v. Lester*, 2014 IL App (1st) 121882-U; *People v. Crosby,* 2014 IL App (1st) 121645-U; *People v. Foster,* 2014 IL App (1st) 101376-U. Simply put, the analysis in *McFadden* not only took the wrong analytical path, it failed to recognize that the other path existed.

¶ 76 Had our analysis in *McFadden* taken into account the distinction between a prior conviction resulting from a constitutionally deficient procedure and one based on a facially unconstitutional statute, the approach we took in that case would have been different. It is important that we acknowledge that now. "Our most important duty as justices of the Illinois Supreme Court, to which all other considerations are subordinate, is to reach the correct decision under the law." *People v. Mitchell*, 189 Ill. 2d 312, 339 (2000). Courts are and should be reluctant to abandon their precedent in most circumstances, but considerations of "*[s]tare decisis* should not preclude us from admitting our mistake" when we have made one and interpreting the law correctly, for as Justice Frankfurter once observed, " 'Wisdom too often never comes, and so one ought not to reject it merely because it comes late.' " *Id.* (quoting *Henslee v. Union Planters National Bank & Trust Co.*, 335 U.S. 595, 600 (1949) (*per curiam*) (Frankfurter, J., dissenting)). "*[S]tare decisis* is not so static a concept that it binds our hands to do justice when we have made a mistake." *Vitro v. Mihelcic*, 209 Ill. 2d 76, 93 (2004) (Fitzgerald, J., dissenting, joined by Kilbride and Rarick, JJ.) ("Here, there are not only compelling reasons, but also the best cause to abandon *Dralle v. Ruder*, 124 Ill. 2d 61 (1988): it was incorrectly decided."). Justice Calvo, a former member of this court, put the matter more bluntly: "When a thing is wrong, it is wrong. The longer we wait to right this wrong, *** the more difficult it will be to rectify the error, embedded in the case law through usage." *Hayes v. Mercy Hospital & Medical Center*, 136 Ill. 2d 450, 495-96 (1990) (Calvo, J., dissenting, joined by Ward and Clark, JJ.).

¶ 77 Even if *Lewis* could somehow be construed to justify the result in *McFadden*, notwithstanding the fundamental qualitative difference in the predicate convictions, we would decline to extend it to the matter before us here. At least one state court has rejected *Lewis* outright. See *State v. Portsche*, 606 N.W.2d 794 (Neb. 2000) (limiting the reach of *Lewis* to the federal statute in that case and holding that defendant's prior uncounseled conviction could not be used to establish that he was a convicted felon for purposes of Nebraska's felon-in-possession statute). And numerous subsequent decisions by the federal courts, including the United States Supreme Court, have declined to extend the decision to cases which do not involve felon-in-possession statutes. See *Baldasar v. Illinois*, 446 U.S. 222 (1980) (holding that a defendant can collaterally attack an uncounseled misdemeanor conviction used to convert a subsequent misdemeanor into a felony); *United States v. Clawson*, 831 F.2d 909, 914 (9th Cir. 1987) ("*Lewis* is inapplicable where prior convictions are used to determine the punishment, rather than to define the offense."); *United States v. Paleo*, 9 F.3d 988 (1st Cir. 1992) (despite *Lewis* the sentence enhancement statute does not require a court to consider unconstitutionally obtained—but not yet set aside—convictions as sentencing predicates); *United States v. Nicholas-Armenta*, 763 F.2d 1089 (9th Cir. 1985) (allowing collateral attacks on deportation orders that form the basis of a subsequent criminal conviction).

¶ 78 If *Lewis*'s effect is thus limited even within the context of criminal cases, it is difficult to see any sound justification for extending it—or *McFadden*—to a civil case such as this one.

Those decisions are simply inapposite. Both involved criminal prosecutions, both involved the interpretation and application of specific felon-in-possession statutes, and both were premised on concerns over effectuating the purposes of those statutes, namely, protecting the public from dangerous persons who are seeking to obtain firearms. *McFadden*, 2016 IL 117424, ¶¶ 29-30; *Lewis*, 445 U.S. at 67. None of those factors is present here. This is not a criminal proceeding, and we are not being called upon to construe and apply either Illinois's UUWF statute or the federal felon-in-possession statute. Rather, this is a parental rights termination proceeding involving section 1(D)(i) of the Adoption Act (750 ILCS 50/1(D)(i) (West 2010)). The issue here is whether Floyd F. is fit to be a parent. Insisting that Floyd F.'s prior AUUW conviction be given effect in this proceeding would not advance any firearms-related public safety concerns. It would have no impact on firearms policy or public safety at all. Instead, all it would do is place the courts in the constitutionally untenable position of permanently depriving an individual of his fundamental parental rights based on conduct that the state had no power to punish.

¶ 79 We note, moreover, that in *Lewis*, on which *McFadden* relied, the United States Supreme Court justified use of the constitutionally deficient firearms conviction because, in that case, the sanction imposed by the federal felon-in-possession statutory scheme "attache[d] immediately upon the defendant's first conviction" and, unlike its earlier decisions in *Burgett*, *Tucker*, and *Loper*, the subsequent conviction did not depend on reliability of that first conviction. *Lewis*, 445 U.S. at 67. Those considerations are not present here either. Under section 1(D)(i) of the Adoption Act (750 ILCS 50/1(D)(i) (West 2010)), the provision that controls this case, the sanction—being deemed "depraved" and thus unfit—does not attach immediately upon the first offense. Three convictions of certain specified types are required, and they must fall within a certain time frame. And whether one meets the definition of "depravity" depends not just on the fact of those three prior convictions but on what they tell us about a person's fitness to continue to be a parent. Reliability of the convictions thus matters a great deal.

¶ 80 This is apparent from the terms of section 1(D)(i) of the Adoption Act. Under the plain and unambiguous language of the statute, the existence of a prior felony conviction is not dispositive for purposes of establishing that a parent is "depraved" and therefore unfit and subject to having his or her rights terminated. *Id.* Rather, the conviction merely goes to creation of a rebuttable presumption of "depravity," a presumption that a parent is given the chance to refute. Indeed, the statutory opportunity afforded parents under section 1(D)(i) to show why the presumption is inapplicable is the very thing that differentiates this subsection from a related provision struck down by this court in *In re D.W.*, 214 Ill. 2d 289 (2005).

¶ 81 It is difficult to envision a more compelling reason for rejecting the presumption of depravity than that one of the predicate convictions on which the State's claim of depravity depends is actually a legal nullity and must therefore be ignored, as Floyd F. clearly established in this case with regard to his constitutionally invalid 2008 AUUW conviction. If a parent were barred from making such a showing and the circuit court were barred from taking that evidence into account, the protections afforded to parents by the statute would be reduced to an empty promise. The presumption of depravity would not be rebuttable at all. In reality, it would be conclusive. Such a conclusion cannot be squared with the plain language of the Adoption Act and would place Illinois in direct opposition to the core constitutional principle that one may

not be forced to suffer sanctions for conduct the federal constitution places beyond the power of the state to punish. We must therefore reject it.

¶ 82 We note, moreover, that if *Lewis* and *McFadden* applied to parental rights cases in the same way that they applied to prosecutions for firearms violations, it would mean that a person would have to set aside the unconstitutional weapons offense before exercising his or her fundamental constitutional right to procreate and raise a child. Parents who failed to do so and thus stood convicted of three felonies, as Floyd F. was here, would be unable to escape the categorization of "depravity" within the meaning of the Adoption Act and therefore be categorically barred from parenthood. Such a result would place Illinois law uncomfortably close to the Oklahoma statute struck down on equal protection grounds in *Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535 (1942), under which defendants who had committed two or more felonies of certain types could be deemed "habitual criminals" and subject to forced sterilization.

¶ 83 It would also raise serious due process concerns particularly where, as here, the rule announced in *McFadden* requiring vacatur of the unconstitutional conviction prior to engaging in the subsequent constitutionally protected conduct—in this case procreation of a child—had no antecedent in Illinois law and was not announced by our court until five years after the child was already born, by which time it was too late for the father to take the action the new rule requires. Notice and "fair warning," touchstones of due process (*Rogers v. Tennessee*, 532 U.S. 451, 461-62 (2001)), and changes in judicial interpretation of the law making the law less favorable to defendants can only be applied prospectively (*People v. Patton*, 57 Ill. 2d 43, 47-48 (1974)). Extending *McFadden* to this case could not be squared with these well-established principles.

¶ 84 In sum, Floyd F.'s unconstitutional AUUW conviction is null and void; thus it cannot serve as a basis for finding him depraved under section 1(D)(i) of the Adoption Act (750 ILCS 50/1(D)(i) (West 2010)). With this conviction removed from consideration, DCFS cannot establish that Floyd F. met the statutory definition of depravity. *Id.* It follows that respondent's parental rights cannot be terminated on that basis. The trial court's termination of Floyd F.'s parental rights under the presumption of depravity was therefore contrary to the manifest weight of the evidence and was properly set aside by the appellate court. While we find this case distinguishable from *McFadden*, to the extent that this result and controlling United States Supreme Court precedent conflict with *McFadden*, *McFadden* is hereby overruled.

¶ 85 In reaching this conclusion, we in no way seek to excuse Floyd F.'s shortcomings as a parent. Based on the record before us, it seems unlikely that he will ever succeed in maintaining a relationship with N.G. that comports with conventional norms. Such concerns, however, cannot excuse us from our obligation to follow the law. As our precedent makes clear, "[t]he liberty interest of parents in the care, custody and management of their child ' "does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." ' *In re D.T.*, 212 Ill. 2d 347, 359 (2004), quoting *Santosky v. Kramer*, 455 U.S. 745, 753, 71 L.Ed.2d 599, 606, 102 S. Ct. 1388, 1394-95 (1982)." *In re D.W.*, 214 Ill. 2d at 311.

¶ 86 On remand, DCFS will have the opportunity to attempt to prove that Floyd F. meets the definition of unfitness under some other provision of the Adoption Act. Today, we hold simply that he cannot be found depraved and therefore unfit under section 1(D)(i) of the Adoption Act

based on his legally nonexistent and now-vacated 2008 AUUW conviction.

¶ 87                                         CONCLUSION
¶ 88            For the foregoing reasons, the judgment of the appellate court is affirmed.

¶ 89            Appellate court judgment affirmed.
¶ 90            Circuit court judgment reversed.

¶ 91            JUSTICE KILBRIDE, specially concurring:
¶ 92            I agree with and join the court's opinion. I also agree with the part of Justice Neville's special concurrence emphasizing that the primary burden of vacating a void conviction based on a facially unconstitutional statute should not be placed on the defendant who has already suffered the violation of his constitutional rights. The special concurrence correctly explains that the dissent's approach unjustly places the entire burden for vacating a void conviction on the defendant. As this court has held, "courts have an independent duty to vacate void orders and may *sua sponte* declare an order void." *People v. Thompson*, 209 Ill. 2d 19, 27 (2004).
¶ 93            A facially unconstitutional statute is void *ab initio*. The statute was, therefore, constitutionally infirm from the moment it was enacted and must be treated as if it were never enacted. *People v. McFadden*, 2016 IL 117424, ¶ 58 (Kilbride, J., concurring in part and dissenting in part, joined by Burke, J.). Given those circumstances, it is fundamentally unfair to use a void conviction based on a facially unconstitutional statute against a defendant in a subsequent proceeding when he or she has not taken affirmative action to vacate the void conviction. *McFadden*, 2016 IL 117424, ¶¶ 62-63 (Kilbride, J., concurring in part and dissenting in part, joined by Burke, J.) (requiring a defendant to obtain official vacatur of a void conviction before engaging in constitutionally protected conduct offends all sense of due process). " '[W]here a statute is violative of constitutional guarantees, we have a duty not only to declare such a legislative act void, but also to correct the wrongs wrought through such an act by holding our decision retroactive.' " *McFadden*, 2016 IL 117424, ¶ 73 (Kilbride, J., concurring in part and dissenting in part, joined by Burke, J.) (quoting *People v. Gersch*, 135 Ill. 2d 384, 399 (1990)). In my view, recognizing the ability of our courts to vacate void convictions *sua sponte* is consistent with our duty to "correct the wrongs wrought" by a facially unconstitutional statute. See *Gersch*, 135 Ill. 2d at 399. Accordingly, I specially concur.

¶ 94            JUSTICE NEVILLE, specially concurring:
¶ 95            I agree with the court's opinion. I write separately to highlight important concerns that are not necessary to the resolution of this appeal but that weigh heavily on this court's duty to ensure the fair administration of justice for all citizens in Illinois.
¶ 96            There is no dispute that a statute that has been declared to be facially unconstitutional is void *ab initio* and is unenforceable from the time it was enacted. *Supra* ¶ 50. Like my colleagues in the majority, I agree that a criminal conviction based on a facially unconstitutional statute is " 'illegal and void.' " *Supra* ¶ 37 (quoting *Ex parte Siebold*, 100 U.S. 371, 376 (1879)). Consequently, such a conviction is a nullity and "cannot be used for any purpose under any circumstances." *Supra* ¶ 37 (citing *Siebold*, 100 U.S. at 376). As the court's

- 25 -

opinion correctly observes, the State is prohibited from giving any efficacy to a prior conviction based on a facially unconstitutional statute (*supra* ¶ 38 (citing *Montgomery v. Louisiana*, 577 U.S. ___, ___, 136 S. Ct. 718, 730 (2016))) because to do so "would be tantamount to forcing the defendant to suffer anew the deprivation of his constitutional rights" (*supra* ¶ 38 (citing *United States v. Bryant*, 579 U.S. ___, ___, 136 S. Ct. 1954, 1956-57 (2016))).

¶ 97    The appellate court vacated defendant's 2008 conviction for aggravated unlawful use of a weapon, and our agreement with that decision settles the question for this appeal. But the pervasive problem of properly allocating the responsibility for correcting a void conviction endures.

¶ 98    The dissent expresses the view that each defendant whose constitutional rights have been violated by an illegal conviction must undertake the task of having that conviction vacated and must do so in an "appropriate proceeding." See *infra* ¶¶ 133-36, 158, 171. The upshot of this position is that if a defendant fails to do so, the illegal conviction stands and can be used against that defendant in later proceedings where his or her criminal history is at issue. This approach nullifies the void *ab initio* rule and places additional restrictions and burdens on defendants who have been convicted under a facially unconstitutional statute. I strongly disagree with the dissent's approach.

¶ 99    According to the dissent, the defendant bears the responsibility for vacating his illegal conviction premised on a facially unconstitutional statute. See *infra* ¶¶ 149-53, 158. But it is manifestly unfair to hold defendants exclusively responsible for vacating a void conviction. This approach places an onerous burden on lay defendants who are the least equipped to undertake that burden because they lack legal skills and do not know how to navigate the legal system. The dissent's approach would allow a void conviction to remain on the record of this defendant and all other similarly situated defendants. That result cannot be tolerated in a well-ordered system of justice.

¶ 100   Vacatur is the procedural means used to correct the entry of a void judgment of conviction. See Black's Law Dictionary 1782 (10th ed. 2014) (defining "vacatur" as "[t]he act of annulling or setting aside" or "[a] rule or order by which a proceeding is vacated"). However, vacatur alone is inadequate to remedy the wrong occasioned by an illegal conviction. The rights and interests of the defendant can only be restored if the record of that conviction is expunged from his or her criminal record. Expungement is the procedure used to remove the conviction from the defendant's record after a conviction has been vacated. See 20 ILCS 2630/5.2(b)(6) (West 2016); 730 ILCS 5/5-5-4(b) (West 2016). Thus, it is the necessary capstone in providing a remedy to those who were prosecuted under a facially unconstitutional statute.

¶ 101   In my view, the burden of correcting an illegal conviction must be borne by all of the participants in the criminal justice system. It is axiomatic that "courts have an independent duty to vacate void orders and may *sua sponte* declare an order void." *People v. Thompson*, 209 Ill. 2d 19, 27 (2004). Therefore, our circuit and appellate courts must take action to vacate and expunge a conviction that was based on a facially unconstitutional statute.

¶ 102   Prosecutors also share the responsibility of ensuring that void convictions are vacated and expunged. In fact, I believe the standards adopted by the American Bar Association indicate that prosecutors have a duty to initiate proceedings of their own accord to vacate any convictions that are premised on a statute that has been declared to be facially unconstitutional.

Section 3-1.2(f) of the American Bar Association (ABA) Standards for Criminal Justice, titled "Functions and Duties of the Prosecutor," states:

"The prosecutor is not merely a case-processor but also a problem-solver responsible for considering broad goals of the criminal justice system. The prosecutor should seek to reform and improve the administration of criminal justice, and when inadequacies or injustices in the substantive or procedural law come to the prosecutor's attention, the prosecutor should stimulate and support efforts for remedial action." ABA Standards for Criminal Justice, Standard 3-1.2(f) (4th ed. 2015).

The "[p]revailing norms of practice as reflected in American Bar Association standards *** are guides to determining what is reasonable." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). While the imperatives set forth in section 3-1.2(f) are "only guides" (*id.*), they highlight the fact that prosecutors are often in the best position to address inadequacies or injustices in the criminal justice system by initiating remedial action to improve the administration of justice.

¶ 103    Therefore, contrary to the views expressed by the dissent, I reject the notion that the burden of correcting a void conviction falls exclusively on the defendant. Rather, the State should be required to undertake that responsibility. Where a court—at any level—has notice that a defendant's conviction is void, that court has an independent obligation to vacate and expunge the void conviction. In addition, the state's attorney in each county should commence proceedings to vacate and expunge all void convictions that were predicated on a statute that has been declared to be facially unconstitutional. In my view, the aforementioned remedies can be used by criminal justice participants to return illegally convicted defendants to their preconviction status.

¶ 104    I also disagree with the dissent's conclusion that the vacatur of a void conviction can only be accomplished by the filing of a petition in a collateral proceeding under (i) the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2016)) or (ii) section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2016)) or (iii) the Habeas Corpus Act (*id.* § 10-124). See *infra* ¶ 133. As this court's opinion observes, such petitions are not the only avenues available to mount a collateral attack on a conviction under a statute that has been declared to be facially unconstitutional. *Supra* ¶ 54. Rather, void judgments are not subject to forfeiture and may be attacked at any time or in any court (*supra* ¶ 43).

¶ 105    To preclude a defendant from challenging a void conviction in a proceeding in which that conviction is being used against him or her is unjust. Indeed, that seems to be the most appropriate time for doing so. The position adopted by the dissent would leave in place a conviction premised on a facially unconstitutional statute merely because the defendant failed to commence a collateral attack prior to the State's attempt to use the illegal conviction against him—a circumstance that the defendant may not be able to anticipate. The facts of this case illustrate the point. All three of Floyd F.'s felony convictions were entered before N.G. was born. The fact that the void conviction for aggravated unlawful use of a weapon was being used against him to terminate his right to parent N.G. is precisely why the termination proceeding was an appropriate proceeding to raise the constitutional challenge.

¶ 106    In conclusion, I concur that the judgment of the appellate court in this case must be affirmed. I remind our circuit and appellate courts of their duty to *sua sponte* vacate and expunge void convictions. I also encourage the state's attorney in each county to commence

proceedings to vacate and expunge any illegal convictions based on a facially unconstitutional statute. Finally, I note that the expungement of void convictions from the criminal record is necessary for all defendants who have been wrongfully convicted to receive complete justice.

¶ 107    JUSTICE THEIS, dissenting:

¶ 108    The issue brought before the appellate court was whether a criminal conviction, which had not been collaterally attacked, was admissible as evidence of depravity in a subsequent termination of parental rights proceeding. The appellate court contorted the issue to decide whether the appellate court had the authority to vacate the criminal conviction on appeal from the termination of parental rights proceeding. The majority takes the bait and follows suit. In doing so, the majority tramples on the facts, judicial restraint, party presentation, appellate jurisdiction, proper procedure, precedent, and the role of courts in our adversarial system to achieve its desired result.

¶ 109    Facts matter. In proceedings before a reviewing court, the record is vital to our understanding of the procedural posture of the case and to our analysis. The majority insists that (1) "it is clear from the supplemented appellate record" (*supra* ¶ 65) that respondent's conviction was based on the unconstitutional statutory provision addressed in *Aguilar* and (2) that respondent "sought to have the prior conviction itself nullified and vacated" (*supra* ¶ 66). Both points are egregiously inaccurate.

¶ 110    First, the record as presented to this court contains no "supplemented appellate record" from which this court could verify the documents of which the appellate court took judicial notice. The appellate court indicated that it "sought and obtained documents from the Will County circuit court" (2017 IL App (3d) 160277, ¶ 8), but there is no indication that any order was entered to obtain those documents, and no supplement to the record was actually made. Appellate courts are courts of review, not fact-finding tribunals, and their role is to decide the merits of cases based on the record of proceedings.

¶ 111    Second, the record contains absolutely no pleading filed by respondent in which he sought to have his 2008 judgment of conviction vacated. Furthermore, at no point in the termination of parental rights hearing before the circuit court did respondent seek to vacate that conviction, nor did he even seek to do so for the first time on appeal from the termination proceeding. At most, respondent testified at the unfitness hearing, to rebut the presumption of depravity, that there was a pending appeal, or perhaps a postconviction petition attacking his 2011 conviction, and that if successful it would impact his release date. The majority's misstatements and mischaracterizations of the record not only undermine confidence in its decision but skew the result, making it outcome determinative.

¶ 112    Judicial restraint matters. As recognized by the appellate court, there was a factually unresolved question on appeal as to whether our decision in *Aguilar* was even applicable to respondent's 2008 conviction. That matter was outside the record of these proceedings. At the termination hearing, the State submitted into evidence certified copies of respondent's convictions. The certified copies, however, did not indicate that the 2008 conviction was based on the provision declared unconstitutional in *Aguilar*. No other documents were made part of the record by respondent before the circuit court with respect to the 2008 criminal proceeding.

¶ 113    At the time of the offense, the AUUW statute required the State to prove the elements found in subsections (a)(1) or (a)(2), as well as one of the elements found in subsection (a)(3).

See 720 ILCS 5/24-1.6(a)(1), (a)(2), (a)(3) (West 2008). Only subsection (a)(1), (a)(3)(A) (*id.* § 24-1.6(a)(1), (a)(3)(A)) was found to be unconstitutional in *Aguilar* due to a recent intervening change in constitutional interpretation. *People v. Aguilar*, 2013 IL 112116. There is simply no indication in the record that respondent's conviction was under that subsection.

¶ 114    Although Illinois Supreme Court Rule 366(a)(3) (eff. Feb. 1, 1994) permits this court to order or permit amendments to the record by correcting errors in the record or by adding matters that should have been included from the record, "it is axiomatic that where evidence was not offered during the trial of a matter, it cannot be introduced for the first time on appeal." *H.J. Tobler Trucking Co. v. Industrial Comm'n*, 37 Ill. 2d 341, 344 (1967). Instead, the appellate court took it upon itself to investigate the 2008 criminal proceeding, which was not squarely before the court. It also took it upon itself to investigate respondent's pending postconviction petition related to his 2011 judgment of conviction. As the majority recognizes, that petition was also not squarely before the appellate court. *Supra* ¶ 53.

¶ 115    After taking judicial notice of certain facts from the 2008 criminal proceeding to establish evidentiary proof regarding the nature of the conviction, the appellate court used those facts to not only fill evidentiary gaps in the record but as a basis to vacate the judgment of conviction in the 2008 criminal proceeding. Despite the fact that the majority finds the investigation was "well within the appellate court's authority" (*supra* ¶ 32), none of the majority's cited precedent, nor the Illinois Rules of Evidence (Ill. R. Evid. 201 (eff. Jan. 1, 2011)) regarding judicial notice, countenances the *use* of judicially noticed facts from outside the record on appeal to fill gaps in the evidentiary record and to *sua sponte* vacate a judgment of conviction in a separate criminal proceeding. The majority ignores any proper limitations on the use of judicially noticed facts. Now, going forward, appellate courts have the green light to undo final judgments in a completely different proceeding.

¶ 116    Party presentation of the issues matters. The appellate court's *sua sponte* actions were especially problematic where respondent did not seek to have his 2008 judgment of conviction vacated in this termination proceeding. Instead, he raised an entirely different issue for the first time on appeal, seeking to bar the admission of his 2008 conviction as evidence in his termination proceeding because that conviction was based on an unconstitutional statute.

¶ 117    By *sua sponte* reaching a totally different issue here the appellate court no longer functioned as neutral arbiter. Instead, the court became an advocate for respondent and denied the State and the minor the opportunity to address the newly reframed issue regarding the court's authority to vacate the 2008 conviction. Indeed, the minor specifically argued before this court that the appellate court circumvented her right to a full hearing on that matter. She asserted that "the appellate court overreached in its authority and discretion by *sua sponte* supplementing the original appellate record [which it actually did not even supplement], and by vacating respondent's [2008] conviction in a Juvenile matter where respondent did not request a vacatur, nor filed a notice of appeal or any other post conviction motions in his [2008] case."

¶ 118    As we have repeatedly explained, our precedent counsels adherence to the principle of judicial restraint. The parties are responsible for advancing the facts and arguments entitling them to relief. " '[Courts] do not, or should not, sally forth each day looking for wrongs to right. We wait for cases to come to us, and when they do we normally decide only questions presented by the parties. ***' [Citation.]" *Greenlaw v. United States*, 554 U.S. 237, 244

(2008); see also *People v. Boeckmann*, 238 Ill. 2d 1, 13 (2010) (it is not appropriate to address issues in a case where the parties have not raised or argued it); accord *Roberts v. Northland Insurance Co.*, 185 Ill. 2d 262, 270 (1998).

¶ 119 The doctrine of judicial restraint is especially compelling here where the appellate court had to first *sua sponte* fill in an evidentiary gap and then *sua sponte* reframe the issue without any briefing on the issue of vacatur by the State or the minor. This process is antithetical to our pledge, *audi alteram partem*—hear the other side—which is prominently displayed in our courtroom. Despite the myriad problems with the appellate court's approach, the majority barrels on without pause.

¶ 120 Nevertheless, the majority fails to break down the analysis of the entirely separate and distinct questions now before this court. Seen clearly, the issues before this court are as follows: (1) whether the reviewing court had jurisdiction to vacate the 2008 criminal conviction on appeal from the termination of parental rights proceeding and, if not, (2) whether the 2008 criminal conviction could be admitted as evidence in the termination of parental rights proceeding to establish the rebuttable presumption of depravity.

¶ 121       Jurisdiction to Vacate the 2008 Conviction

¶ 122 The appellate court lacked jurisdiction to vacate the 2008 criminal conviction in these proceedings. The circuit court's jurisdiction over the 2008 judgment of conviction had long since lapsed. No appeal had been taken from that judgment. Thus, at the time the State alleged respondent was depraved, respondent had a judgment of conviction that was final and had not been vacated. The only matter before the circuit court was the State's pleading in the termination proceeding. The circuit court entered a judgment in *that* proceeding, and respondent appealed from *that* judgment.

¶ 123 As we explained in *Flowers*, "the appellate court is not vested with authority to consider the merits of a case merely because the dispute involves an order or judgment that is, or is alleged to be, void." *People v. Flowers*, 208 Ill. 2d 291, 308 (2003). Thus, as applied here, the appellate court was not vested with jurisdiction to enter any orders with respect to the 2008 judgment merely because the termination dispute involved a judgment in another proceeding that is alleged for the first time on appeal to be void. Respondent correctly recognized this problem where he stated in his supplemental brief to the appellate court that declaring the 2008 conviction as "inadmissible for evidentiary purposes in a hearing on a petition to terminate parental rights is not necessarily tantamount to declaring the conviction void and vacating it. This may well reconcile any jurisdictional concerns." The appeal from the judgment in the termination proceeding was simply not a vehicle for obtaining relief from a final judgment in a separate criminal proceeding.

¶ 124 The majority buys into the appellate court's judicial sleight of hand and proceeds to case discussion. The majority insists that *Montgomery v. Louisiana*, 577 U.S. ___, 136 S. Ct. 718 (2016), *Ex parte Siebold*, 100 U.S. 371 (1879), and our own precedent mandate that the court has an affirmative duty to vacate respondent's 2008 conviction in these proceedings and that this is an appropriate forum to seek that relief. *Supra* ¶¶ 34-36. These cases say nothing of the kind.

¶ 125 *Montgomery* merely stands for the proposition that, under the supremacy clause, new substantive constitutional rules must be made retroactively applicable to cases on state

collateral review. In *Montgomery*, the United States Supreme Court held that the rule announced in *Miller v. Alabama*, 567 U.S. 460 (2012), which held that mandatory life sentences without parole for juvenile offenders violated the eighth amendment, was a new substantive constitutional rule that must be given retroactive effect in state collateral proceedings regardless of when the conviction became final. *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 733-34. *Montgomery* was relying on the retroactivity jurisprudence announced in *Teague v. Lane*, 489 U.S. 288, 300 (1989), which clarified and limited the circumstances under which a defendant whose conviction was final could claim the benefit of a new rule. As we recently reiterated, "[i]f a new rule qualifies as a 'substantive rule' under *Teague*, then defendants whose convictions are final may seek the benefit of that rule through appropriate collateral proceedings." *People v. Price*, 2016 IL 118613, ¶ 31. In contrast, new rules of criminal procedure, other than a watershed rule of procedure, will not be applied on collateral review. *Teague*, 489 U.S. at 310.

¶ 126    Finality of judgments matters. The majority makes the extraordinary claim that "[a]s for concerns over the finality of judgments, these are of little consequence as a practical matter." *Supra* ¶ 58. As the Supreme Court explained in *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), retroactivity jurisprudence "was motivated by a respect for the States' strong interest in the finality of criminal convictions." In recognizing that finality of judgments mattered, the Supreme Court in *Montgomery* reiterated that when a state court "adjudicate[s] claims under its collateral review procedures," the claim must be "properly presented in the case." *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 732. The Court explained that "this Court is careful to limit the scope of any attendant procedural requirement to avoid intruding more than necessary upon the States' sovereign administration of their criminal justice systems." *Id.* at ___, 136 S. Ct. at 735.

¶ 127    To state the corollary, the supremacy clause does not impose upon state courts a constitutional obligation to grant relief from a final judgment where the claim is not properly presented in the state court proceedings. Nor does the supremacy clause mandate the procedural mechanisms by which state courts afford collateral review. The Court was well aware that the proper mode of collaterally attacking a criminal conviction in a state court depends on state law, not federal law. See *Danforth v. Minnesota*, 552 U.S. 264, 288 (2008) ("the remedy a state court chooses to provide its citizens for violations of the Federal Constitution is primarily a question of state law").

¶ 128    To the extent the majority hangs its analytical hat on *Siebold* for the proposition that we have a duty to vacate respondent's criminal conviction in these proceedings, the majority is again off base. *Siebold* mandates that there be a remedy for a challenge to a conviction obtained under an unconstitutional law. It does not mandate that we create a new method of collateral attack.

¶ 129    In *Siebold*, petitioners were convicted of violating federal election laws. They filed a petition for a writ of *habeas corpus* in the Supreme Court attacking the validity of the judgment on the ground that the federal statutes under which they were convicted were unconstitutional. The Supreme Court addressed whether *habeas* relief was an available remedy because a federal court had no inherent *habeas* power. It was unlawful to use the federal *habeas* writ "as a mere writ of error." *Siebold*, 100 U.S. at 375.

¶ 130    The Court held that a conviction obtained under an unconstitutional law warranted expansion of *habeas* relief because, if the law was unconstitutional and void, it placed the conduct beyond the power of the Congress to proscribe and "cannot be a legal cause of imprisonment." *Id.* at 377. If the federal *habeas* statute did not expand to allow for challenges to a conviction obtained under an unconstitutional law, then prisoners would have no remedy. *Id.* Therefore, the claim was subject to collateral attack in federal *habeas corpus* proceedings. *Id.*

¶ 131    *Montgomery* holds that the conclusion in *Siebold* applies to state collateral review proceedings, "assuming the claim is properly presented in the case." *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 732. This limitation is an important one. Illinois applies the principle of finality of judgments rigorously in both civil and criminal cases. We recognize only those remedies clearly embedded in our statutes and common law.

¶ 132    Under the specific facts in *Montgomery*, the defendant had a state law collateral remedy, which was properly presented. *Id.* at ___, 136 S. Ct. at 726. As the *Montgomery* court explained, in Louisiana, there are two principal mechanisms for collateral challenge to the lawfulness of imprisonment. Indeed, the defendant had a state remedy and followed the proper procedure to obtain that remedy by bringing a collateral attack on his sentence by filing a motion to correct an illegal sentence in the district court. *Id.* at ___, 136 S. Ct. at 726. Thus, *Montgomery* requires that, in a properly presented state court collateral proceeding, the Louisiana Supreme Court was required to give *Miller* retroactive effect.

¶ 133    Illinois has several procedural methods by which a defendant could collaterally attack a final judgment. A prisoner may seek *habeas corpus* relief on the grounds enumerated in section 10-124 of the Habeas Corpus Act. See 735 ILCS 5/10-124 (2014); *People v. Gosier*, 205 Ill. 2d 198, 205 (2001). Additionally, a defendant whose conviction is final and who claims his conviction is premised on an unconstitutional statute may seek relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2014)) or by filing a petition pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2014)).

¶ 134    Section 2-1401 establishes a comprehensive, statutory procedure that allows for final orders and judgments to be challenged more than 30 days after their entry. See *People v. Vincent*, 226 Ill. 2d 1, 7 (2007). A defendant seeking to vacate a void judgment is not subject to the usual time limitations or due diligence requirements of section 2-1401. *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 104-05 (2002); *People v. Harvey*, 196 Ill. 2d 444, 452-53 (2001) (McMorrow, J., specially concurring, joined by Freeman, J.). Thus, in this case, section 2-1401 is an available mechanism to collaterally attack respondent's 2008 conviction where respondent could present evidence before the circuit court to support his claim and where the State would have the opportunity to respond accordingly. See, *e.g.*, *People v. Shinaul*, 2017 IL 120162, ¶ 14 (the defendant properly understood that the way to vacate his void conviction after a final judgment had been entered on his guilty plea was to collaterally attack it through the filing of a section 2-1401 petition). Respondent did nothing like that.

¶ 135    Until now, we have never held that an appeal from a termination of parental rights proceeding is a proper vehicle under Illinois law to seek relief from a final judgment of conviction in a criminal proceeding. To put this proceeding in the framework of *Montgomery*, the termination proceeding is not a state "collateral-review proceeding" and does not involve a claim that is "properly presented."

¶ 136    Instead, the majority perverts and distorts the concept of collateral attack. Under the majority's novel and unprecedented view, despite there being a remedy available to respondent, after today, Illinois courts are now compelled to *sua sponte* revisit settled convictions in any proceeding that is pending before a court where defendant contends his conviction is based on a facially unconstitutional statute. "[I]f the constitutional infirmity is put in issue during a proceeding that is pending before a court, the court has an independent duty to vacate the void judgment and may do so *sua sponte*." *Supra* ¶ 57. The breadth of this holding is stunning.

¶ 137    Additionally, the majority's application of retroactivity jurisprudence in the context of collateral review is misplaced here. The matter at issue here is a direct review of whether the circuit court erred in the termination proceeding. The *Aguilar* decision was rendered before the termination proceeding. Therefore, to say that we must apply *Aguilar* "retroactively" to this matter, on direct review from a termination proceeding that did not predate *Aguilar*, makes no sense.

¶ 138    More importantly, this is not a case where we are asked to decide whether a new substantive constitutional rule applies to a criminal case pending on collateral review. *Montgomery* would be relevant if respondent sought to have his prior 2008 judgment of conviction vacated in a proper collateral proceeding attacking that judgment, which did precede *Aguilar*. That is not by any stretch of the imagination the procedural posture of this case.

¶ 139    Not only is *Montgomery* inapt here, none of the Illinois cases cited by the majority remotely support the majority's newly articulated view. For example, *People v. Meyerowitz*, 61 Ill. 2d 200 (1975), involved the defendants' motion to vacate their guilty pleas and to terminate probation based on an unconstitutional statute. This court allowed that motion to serve as an appropriate mechanism to collaterally attack their judgments of conviction where there was no other statutory remedy available to them. In doing so, this court "recognized that considerations of justice and fairness require that an accused who asserts a substantial denial of his constitutional rights in the proceedings in which he was convicted be afforded a procedure by which the challenged proceedings may be reviewed." *Id.* at 205. The court also emphasized that the circuit court had continuing jurisdiction over the defendants in that case because they were still under probation when they initiated the postconviction proceedings. *Id.*

¶ 140    *People v. Warr*, 54 Ill. 2d 487 (1973), involved certain defendants who pleaded guilty to certain offenses without the assistance of counsel. A year later, they filed pleadings in the trial court purporting to be either a *habeas* petition or a postconviction petition in which they contended that the plea violated their constitutional rights. The circuit court dismissed the pleadings because they did not fall within the scope of the remedies that had been sought. *Id.* at 490-91. This court recognized the familiar statutory methods of collateral attack upon a judgment; however, these remedies were not available to these defendants. *Id.* at 491-92. This court found it was imperative that a remedy be provided for the substantial violations of constitutional rights. Thus, in the court's exercise of its supervisory authority, it held that, where there was no other remedy, these defendants could institute a proceeding in the nature of a postconviction proceeding. *Id.* at 493.

¶ 141    Finally, in *People v. Thompson*, 209 Ill. 2d 19, 25-27 (2004), this court allowed a challenge to a sentence as void to be raised for the first time in an appeal from the denial of a

postconviction petition. Under the void sentence rule, which has now been abolished, defendants could, at any time, challenge their sentence as void because they were not authorized by statute, thereby bypassing the normal rules of forfeiture. See 725 ILCS 5/122-3 (West 2014) (any claim of substantial denial of constitutional right not raised in the original or an amended petition is forfeited); *Price*, 2016 IL 118613, ¶ 16 ("the void sentence rule functioned as a judicially created exception to the forfeiture doctrine").

¶ 142 The takeaway from these Illinois cases is not the extremely broad holding articulated by the majority. The majority insists that these cases stand for the broad principle that "there is no fixed procedural mechanism or forum, nor is there any temporal limitation governing when a void *ab initio* challenge may be asserted." *Supra* ¶ 57. The majority again misses the mark. These cases merely represent examples of the unremarkable proposition that we provide a mechanism by which to remedy the substantial denial of a constitutional right and that, where a conviction is alleged to be void, the normal rules of forfeiture and statutory limitation periods are simply inapplicable. Here, to be sure, respondent has not forfeited his right to a remedy. He has a procedural mechanism by which to remedy the deprivation of his constitutional right. He just never used that mechanism.

¶ 143 The majority's novel and expansive holding has serious implications. After today, a final judgment of conviction is apparently now open to a new, unprecedented form of collateral attack. The appellate court now has a *sua sponte* duty to engage in a minitrial on the underlying conviction to determine whether the underlying conviction is void and, if so, then would have a *sua sponte* duty to vacate that conviction. Indeed, Justice Wright sounded the alarm. 2017 IL App (3d) 160277, ¶ 39 (Wright, J., dissenting) ("I respectfully disagree that this court should vacate the 2008 criminal conviction in order to resolve the serious issues in this appeal. I have concerns that the precedent flowing from this decision to vacate a criminal conviction in a juvenile case would have far reaching, but unintended consequences we have yet to consider.").

¶ 144 Using this new *ad hoc* method to vacate a judgment creates real life problems and consequences. It is important to note that the appellate court's ruling vacating the 2008 judgment appears in the body of the opinion: "Accordingly, we vacate the 2008 conviction, reverse the circuit court's unfitness finding and, reverse, by necessity, the court's best interest determination, and remand the case for further proceedings consistent with this decision." *Id.* ¶ 31 (majority opinion). The vacatur appears nowhere in the actual judgment line. *Id.* ¶¶ 33-34. Nor could it. The judgment line is telling.

¶ 145 After today, anyone relying on the status of a conviction, including the circuit court clerk, the Department of Corrections, law enforcement, probation officers, prosecutors, and counsel, will have to scour our opinions to determine if a judgment in another proceeding has been vacated. The majority fails to address any of these real concerns and, indeed, perpetuates the problem by agreeing that the 2008 conviction must be vacated but then affirming the judgment of the appellate court, which merely reversed and remanded the judgment in the termination proceeding. *Supra* ¶ 88.

¶ 146 To recap, the appellate court lacked jurisdiction to vacate the 2008 judgment of conviction in these proceedings, and the majority should not have followed that court's errant lead and vacated that conviction.

¶ 147　　　　　　　Whether the 2008 Conviction Was Admissible in This Proceeding

¶ 148　　　The majority's error does not stop with the improper vacatur. Assuming the 2008 judgment could be vacated in this proceeding, then there were only two convictions from which to seek a finding of depravity and, thus, a failure of proof under section 1(D)(i) of the Adoption Act. 750 ILCS 50/1(D)(i) (West 2014). Under the majority's analysis then, there is no need to address whether the 2008 conviction, which has not yet been vacated, could be admissible in this proceeding. Accordingly, based on the majority's analysis, there is no need for it to address *People v. McFadden*, 2016 IL 117424; the majority's entire discussion is mere *dicta*.

¶ 149　　　Nevertheless, because I would find that this is not a proper forum to vacate respondent's conviction, I will address whether the 2008 conviction was admissible as evidence in the termination of parental rights proceeding to establish the rebuttable presumption of depravity. The State and the minor maintain that respondent could not be relieved of the presumption of depravity predicated on the certified statements of conviction before that conviction was properly vacated in an appropriate collateral proceeding. They rely for support on our decision in *McFadden*.

¶ 150　　　In *McFadden*, this court was asked whether a prior conviction, which was vulnerable to collateral attack based on an unconstitutional statute, could properly serve as proof of the predicate felony conviction in a separate criminal prosecution for UUW by a felon. *Id.* ¶ 21. Noting that our existing precedent had not addressed this issue as presented in this framework, we turned to federal court precedent for illustration and guidance. *Id.* ¶ 22. In *Lewis v. United States*, 445 U.S. 55 (1980), the United States Supreme Court addressed the issue of whether a state felony conviction, which was subject to collateral attack under *Gideon v. Wainwright*, 372 U.S. 335 (1963), but had not been vacated, could serve as a predicate offense to a subsequent prosecution for a felon in possession of a firearm. *Lewis* held that the defendant's prior criminal conviction could properly be used as a predicate in his subsequent conviction for possession of a firearm regardless of the fact that the prior conviction might otherwise be subject to collateral attack on constitutional grounds. *Lewis*, 445 U.S. at 65.

¶ 151　　　The Court had before it a statute under which the federal crime of being a felon in possession of a firearm depended on the defendant being a person who "has been convicted *** of a felony." (Internal quotation marks omitted.) *Id.* at 60. The Court characterized the language of the statute, "convicted by a court," as "unambiguous[ ]" and "sweeping." *Id.* The Court held that the statute's "plain meaning is that the fact of a felony conviction imposes a firearm disability until the conviction is vacated or the felon is relieved of his disability by some affirmative action" *Id.* at 60-61. The Court viewed the statutory language as being consistent "with the common-sense notion that a disability based upon one's status as a convicted felon should cease only when the conviction upon which that status depends has been vacated." *Id.* at 61 n.5. That the disabling conviction was unconstitutionally obtained did not alter the fact that the defendant had been convicted of a felony at the time he possessed the firearm. *Id.* at 60-61. The Court found it immaterial whether the predicate conviction "ultimately might turn out to be invalid for any reason." *Id.* at 62. The Court emphasized that "a convicted felon may challenge the validity of a prior conviction, or otherwise remove his disability, before obtaining a firearm." *Id.* at 67.

¶ 152　　　We viewed our own statute in concert with the federal statute, agreeing that, like the federal statute, our own legislation is concerned with the role of that conviction as a disqualifying

condition for the purpose of obtaining firearms. *McFadden*, 2016 IL 117424, ¶ 29. The UUW by a felon statute requires the State to prove only the defendant's felon status. *Id.* We found that the policy and purpose of the statute "are served by requiring an individual to clear his felony record before possessing a firearm, 'no matter what infirmity infects his conviction.' [Citation.]" *Id.* ¶ 30. We also explained that

> "[i]t is axiomatic that no judgment, including a judgment of conviction, is deemed vacated until a court with reviewing authority has so declared. As with any conviction, a conviction is treated as valid until the judicial process has declared otherwise by direct appeal or collateral attack. Although *Aguilar* may provide a basis for vacating defendant's prior *** conviction, *Aguilar* did not automatically overturn that judgment of conviction. Thus, at the time defendant committed the UUW by a felon offense, defendant had a judgment of conviction that had not been vacated ***." *Id.* ¶ 31.

¶ 153 We further found that nothing prevented a defendant from seeking a remedy for the deprivation of his constitutionally guaranteed right. The remedy was to challenge the judgment and have the conviction set aside before deciding to possess a firearm. *Id.* ¶ 34. We rejected the defendant's undeveloped assertion that this construction of the statute violated either due process or second amendment rights, as UUW by a felon was a presumptively lawful " 'longstanding prohibition[ ] on the possession of firearms.' " *Id.* ¶¶ 34-35 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)).

¶ 154 The majority's feeble attempts to distinguish this case from the procedural posture of *McFadden* are meritless and mystifying. The majority posits that, unlike the present case, in the case presented in *McFadden*, there was no indication in the record as to either the particular provision of the AUUW statute to which the defendant had pled guilty or the factual basis for the plea. Without the requisite evidence, his claim was untenable. *Supra* ¶ 64.

¶ 155 That fact had no bearing on our holding in *McFadden*. We explained that, even assuming the defendant could successfully vacate his conviction on the basis of *Aguilar*, "that remedy would neither alter nor extinguish the requirement under section 24-1.1(a) that defendant clear his felon status before obtaining a firearm." *McFadden*, 2016 IL 117424, ¶ 37. Nevertheless, we did note that "had defendant properly sought to vacate his 2002 guilty plea before possessing a firearm, these issues could have been adequately considered and resolved in an appropriate proceeding." *Id.* ¶ 33.

¶ 156 Remarkably, this case, like *McFadden*, also suffers from an evidentiary deficiency in that there was nothing presented to the trial court in the termination proceeding that would establish proof that respondent's conviction was based on an unconstitutional statute. There was no indication in the trial court as to either the provision of the AUUW statute to which respondent had pleaded guilty or the factual basis for the plea. As I already established, there is also no "supplemented appellate record" from which "we can therefore say with certainty" that the conviction was based on an unconstitutional statute.

¶ 157 Next, the majority inexplicably posits that, unlike the defendant in *McFadden*, who never filed any pleading to vacate his prior felony conviction and did not seek to vacate the prior conviction on appeal from the prosecution for UUW by a felon, respondent "not only challenged the use of the prior AUUW conviction in this subsequent proceeding, he sought to have the prior conviction itself nullified and vacated." *Supra* ¶ 66. For that proposition, the majority relies on paragraph 25 of the appellate court opinion. 2017 IL App (3d) 160277, ¶ 25.

¶ 158    In reality, just like the defendant in *McFadden*, respondent has not filed a pleading seeking to vacate his prior conviction on the basis of an unconstitutional statute and did not seek to vacate it on appeal. Rather, exactly like *McFadden*, respondent is seeking to challenge the admissibility of his conviction on the basis of *Aguilar* for the first time on appeal, as respondent indeed acknowledged in his appellate brief. To the extent he objected before the trial court in the termination proceeding to the admissibility of the 2008 conviction, that objection was "based on the fact that there [was] an ongoing appeal having been filed challenging the constitutionality of the arrest." Notably, the circuit court's ruling overruling that objection was correct. As we have explained, "the Adoption Act does not call for courts to reserve ruling on findings of unfitness which are related to criminal matters until the appellate process in the underlying cause has been exhausted." *In re Donald A.G.*, 221 Ill. 2d 234, 254 (2006). Moreover, respondent could not have sought to vacate the 2008 conviction on review from the termination proceeding.

¶ 159    Next, the majority critiques our analysis in *McFadden* by stating that this court failed to take into consideration a critical distinction between *Lewis* and *McFadden*, which is purportedly confirmed by *Montgomery*. *Supra* ¶¶ 71-72. Of course, at the outset, *Lewis* and *McFadden* are not cases with the same procedural posture as *Montgomery*, which addressed retroactivity jurisprudence and state collateral review.

¶ 160    To be sure, *Lewis* involved a constitutionally infirm conviction predicated on a violation of the defendant's sixth amendment right to counsel. In *McFadden* and in this case, the constitutional infirmity was based on second amendment rights. The majority emphasizes that the constitutional infirmity in *Lewis* was procedural, while the infirmity in *McFadden* and this case is substantive. The majority finds this to be a "fundamental distinction," relying on *Montgomery*. *Supra* ¶¶ 71-72.

¶ 161    Even assuming that *Teague*'s procedural vs. substantive distinction is relevant here, the majority overlooks that the constitutional infirmity in *Lewis* was a watershed rule of criminal procedure, which pursuant to *Teague* is treated the same way for retroactivity purposes as a new substantive constitutional rule. A *Gideon* violation was such a watershed rule of procedure, which would be applied retroactively. See *Beard v. Banks*, 542 U.S. 406, 417 (2004) ("[i]n providing guidance as to what might fall within this exception, we have repeatedly referred to the rule of *Gideon* [citation] and only to this rule"). In other words, *Teague* treats substantive rules and watershed rules of criminal procedure the same.

¶ 162    Furthermore, the nature of the constitutional infirmity, the sixth amendment violation, was not ultimately dispositive of the holding in *Lewis*. All that mattered in *Lewis* was the fact of defendant's conviction as a disqualifying condition for the purpose of obtaining firearms. The defendant's status as a felon at the time he possessed a firearm imposed upon him a civil disability prohibiting him from possessing firearms before vacating the disability. Similarly, in *McFadden*, the fact of defendant's status as a felon remained, not because we refused to give retroactive effect to *Aguilar* in a collateral review proceeding, but because the defendant had a disability and had not properly vacated his prior conviction before obtaining a firearm. Thus, contrary to the majority's assertion, this court took the correct analytical path in *McFadden*. There is no reason to abandon our precedent by following the majority's confused and conflated analysis.

¶ 163    Our rationale for our decision in *McFadden* has not been undermined by any controlling precedent. The dissent in *McFadden* relied on essentially the same line of reasoning as the majority here, and it was *rejected* by this court. The defendant's *certiorari* petition was denied by the United States Supreme Court. *McFadden*, 2016 IL 117424, *cert. denied*, ___ U.S. ___, 137 S. Ct. 2291 (2017).

¶ 164    As we explained in *McFadden*, lower federal courts have consistently applied the federal statute in this way, regardless of the nature of the constitutional infirmity. See, *e.g.*, *United States v. Mayfield*, 810 F.2d 943, 945-46 (10th Cir. 1987) (affirming conviction where predicate felony conviction may have been void under state law for lack of jurisdiction); *United States v. Chambers*, 922 F.2d 228, 238-40 (5th Cir. 1991) (upholding conviction where predicate felony was subject to nullification on collateral attack); *United States v. Wallace*, 280 F.3d 781, 784 n.1 (7th Cir. 2002) (affirming conviction where predicate conviction was pursuant to a statute declared void *ab initio* by Illinois court under single subject rule); *United States v. Padilla*, 387 F.3d 1087, 1092 (9th Cir. 2004) (upholding conviction where predicate felony was subsequently vacated *nunc pro tunc* but was not yet invalidated when defendant possessed firearm); *United States v. Leuschen*, 395 F.3d 155, 157-59 (3d Cir. 2005) (upholding conviction where predicate felony conviction was based on a statute that had been amended prior to trial).

¶ 165    There is no merit to the majority's implication that this court's decision in *McFadden* was somehow erroneous based on the number of *certiorari* petitions filed and *denied*. *Supra* ¶ 74 n.3. It is illogical to conclude that the Supreme Court's denial of *certiorari* in *McFadden* and its repeated denial in cases relying on *McFadden* meant the case was wrongly decided. Rather, as the Supreme Court has explained, "[t]he denial of a writ of certiorari imports no expression of opinion upon the merits of the case" and has no precedential value. *United States v. Carver*, 260 U.S. 482, 490 (1923).

¶ 166    Furthermore, any suggestion by the majority that applying *McFadden* to the present case would implicate procreative rights and would somehow be akin to forced sterilization is simply ludicrous and merely displays the majority's lack of discipline and outcome-determinative decision-making.

¶ 167    Of course, the proceeding squarely before us is not a criminal proceeding, and we are not being called upon to construe a felon-in-possession statute. Rather, we are being called upon to construe the Adoption Act. I agree there are different statutes at play here that should be individually addressed. Under section 1(D)(i) of the Adoption Act, a parent can be found unfit based on a finding of depravity. 750 ILCS 50/1(D)(i) (West 2014). Although the statute does not define depravity, this court has defined it as " ' "an inherent deficiency of moral sense and rectitude." ' " *In re Abdullah*, 85 Ill. 2d 300, 305 (1981) (quoting *Stalder v. Stone*, 412 Ill. 488, 498 (1952)). It has been similarly described as a course of conduct that indicates a deficiency in a moral sense and shows either an inability or an unwillingness to conform to accepted moral standards. *In re Keyon R.*, 2017 IL App (2d) 160657, ¶ 22. Under this section, there is a rebuttable presumption that a parent is depraved if he "has been criminally convicted" of at least three felonies and at least one of these convictions occurred within five years of the filing of the petition seeking to terminate parental rights. 750 ILCS 50/1(D)(i) (West 2014).

¶ 168    Under the plain language of the statute, the legislature has determined that the fact of having had three felony convictions within a certain time period is enough to create a

rebuttable presumption of depravity. *Id.* The statute evidences a presumptive correlation between repeated felony convictions, which frequently result in incarceration, and the ability to carry out parental responsibilities. The whole focus of the statute is and must be on the operative facts existing at the time of the termination proceedings. When the fundamental parental relationship with a child is at stake, historical facts must matter.

¶ 169   Here, the majority would like us to just simply ignore the fact that respondent has been imprisoned based on the choices respondent has made for nearly this child's entire life. The historical facts, which cannot simply be erased, are that respondent was convicted in 2008 of a felony and was sentenced to 18 months in prison. Approximately one year later, in 2009 he was again convicted of a felony and had other charges dismissed in a plea agreement. Respondent was sentenced to another five years in prison. Just two years later, in 2011, while N.G.'s mother was pregnant with N.G., respondent was charged with additional felonies. One month after N.G. was born, respondent was convicted of his third felony after a plea agreement to dismiss another felony charge. He was sentenced to over nine years in prison. Those three convictions have not been overturned.

¶ 170   The hard facts of the matter are that respondent has spent most of his child's seven years of life, from 2011 to the present, incarcerated and unable to carry out parental responsibilities. His pattern of choices at the time negatively affected his ability to provide for N.G. physically, emotionally, and financially. That history cannot be swept away or ignored. See *People v. Holmes*, 2017 IL 120407, ¶ 32 (" '[t]he past cannot always be erased by a new judicial declaration' " (quoting *People v. Blair*, 2013 IL 114122, ¶¶ 29-30)).

¶ 171   Under the statute, despite three felony convictions, a parent retains the right to offer evidence of parental fitness in rebuttal. 750 ILCS 50/1(D)(i) (West 2014). Here, respondent, who had counsel, exercised that right when he testified regarding his fitness to parent N.G. The trial court heard and considered that testimony. And respondent had ample opportunity to collaterally attack his 2008 conviction in an appropriate proceeding and seek to vacate his conviction well before the termination of parental rights proceeding. His failure to rebut the presumption of depravity is not a reason to find that the circuit court erred. Nor, as I explained, where a respondent has a remedy to collaterally attack his conviction, does the depravity statute in any way violate a respondent's constitutional due process rights.

¶ 172   Accordingly, I would reverse the judgment of the appellate court and affirm the judgment of the circuit court.

¶ 173   For all of these reasons, I dissent.

¶ 174   JUSTICES THOMAS and GARMAN join in this dissent.

¶ 175                    **DISSENT UPON DENIAL OF REHEARING**

¶ 176   JUSTICE THEIS, dissenting:

¶ 177   This court held, in a fractured 4 to 3 opinion, that federal and state law mandated that the court vacate a criminal conviction on appeal from a civil action to terminate parental rights. In doing so, the majority overruled this court's recent decision in *People v. McFadden*, 2016 IL 117424, "to the extent that" (*supra* ¶ 84) it conflicts with United States Supreme Court precedent.

¶ 178    I continue to strenuously object to the majority's flawed rationale for its novel belief that, despite a lack of appellate jurisdiction, a defendant may now, for the first time on appeal from a judgment in a civil proceeding, obtain relief from a final judgment in a separate criminal proceeding.

¶ 179    As I explained in my dissent and as the State maintains in its petition for rehearing, the majority reaches its errant conclusions by contorting the procedural posture of this case, by misapprehending the Supreme Court's holding in *Montgomery v. Louisiana*, 577 U.S. ___, 136 S. Ct. 718 (2016), and the scope of its application in state court proceedings, and by erroneously perverting the concept of collateral attack. Indeed, the majority opinion mandates that we create new unprecedented *ad hoc* methods of collateral attack where several uniform and fair mechanisms already exist for handling relief from final judgments but were simply not properly followed here.

¶ 180    Furthermore, for the reasons stated in my dissent and as argued by the State, this court should excise the portion of the opinion calling *McFadden*'s continued validity into question or at least grant rehearing on the issue.

¶ 181    No legitimate or principled reason exists in this case to warrant this court's reconsideration of the continued validity of our recent decision in *McFadden*. As the State argues, the majority's *sua sponte* treatment of this issue was pure *dicta*, which should be excised from its opinion given the court's conclusion that this case could be distinguished from *McFadden* on "evidentiary and procedural" grounds (see *supra* ¶ 64).

¶ 182    Even if ruling on the continued validity of *McFadden* was necessary to the court's opinion—which it clearly was not—the majority's decision to place *McFadden* in doubt is contrary to the doctrine of *stare decisis*.

¶ 183    *Stare decisis* expresses the policy of the courts to stand by precedent to allow the law to develop in a principled, intelligent manner and not to disturb settled points without a compelling reason. *People v. Colon*, 225 Ill. 2d 125, 145-46 (2007). *Stare decisis* is "essential to the respect accorded to the judgments of [a reviewing court] and to the stability of the law." *Lawrence v. Texas*, 539 U.S. 558, 577 (2003).

¶ 184    The majority offers no compelling reason to revisit *McFadden*. Not only does *McFadden* not conflict with any United States Supreme Court precedent, two weeks after this opinion was filed, the Seventh Circuit reconfirmed in *United States v. Thompson*, 901 F.3d 785, 786 (7th Cir. 2018), that *McFadden* was indeed correctly decided based on the Supreme Court's decision in *Lewis v. United States*, 445 U.S. 55 (1980). In *Thompson*, the defendant pleaded guilty to being a felon in possession of a firearm pursuant to federal law. His prior felony conviction was premised on the state statutory provision found unconstitutional in *Aguilar*. The defendant argued that his prior conviction, which was based on a statute that has been declared void *ab initio*, could not serve as the predicate felony. The defendant raised the very same purportedly dispositive distinction the majority attempts to rely on to overturn *McFadden*—that *Lewis* is limited in scope to an uncounseled conviction as opposed to a facially unconstitutional statute.

¶ 185    The Seventh Circuit rejected the defendant's argument, holding that a prior conviction based on a statute that has been declared void *ab initio* can serve as the predicate felony for a violation of the federal felon in possession statute, relying on the Supreme Court's decision in *Lewis*. *Thompson*, 901 F.3d at 787. The court continued to adhere to the absolutely sound

position it had taken previously in *United States v. Lee*, 72 F.3d 55 (7th Cir. 1995), that the felon in possession statute represents a considered and deliberate decision to require that a prior felony conviction *be vacated or expunged before* a firearm is possessed. *Thompson*, 901 F.3d at 786.

¶ 186    I am deeply troubled by the majority's about-face that a defendant in McFadden's position may now resort to self-help by encouraging a person who has formerly been convicted of a felony to gamble by possessing a firearm, believing that, if arrested, that conviction will be later set aside. The majority's determination, at best, creates legal ambiguity after *Thompson*, which warrants this court's immediate attention.

¶ 187    Abandoning *stare decisis*—a critical aspect of our jurisprudence—was not only wrong, it was fundamentally unfair given that neither party asked the court to revisit the validity of that precedent in this case. I strongly agree with the State that, at a minimum, it should be given an opportunity for supplemental briefing to address the continued validity of *McFadden* where it was clearly blindsided by the majority's redefining of the issues in this case. The majority was comfortable going outside the record to reach its desired result, but it did not even consider requesting supplemental briefing to overturn precedent that was only decided by this court two years ago. See, *e.g.*, *Stone Street Partners, LLC v. City of Chicago Department of Administrative Hearings*, 2017 IL 117720 (ordering supplemental briefing after the case was taken under advisement); *Bartlow v. Costigan*, 2014 IL 115152 (directing the parties to file supplemental briefing following oral argument); *In re Marriage of Donald B.*, 2014 IL 115463 (requesting the parties address an issue through supplemental briefing); *People v. Boeckmann*, 238 Ill. 2d 1, 32 (2010) (Freeman, J., dissenting, joined by Burke, J.) (recognizing that, where no one asked for the case to be overruled, the court did not have the benefit of any developed argument by the parties to warrant a showing of good cause).

¶ 188    Compounding the majority's errors, serious problems are created by the majority's abandonment of basic presumptions on how courts function. The State has now informed us that during the pendency of these proceedings Floyd indeed obtained a proper vacatur of his 2008 conviction under an appropriate section 2-1401 petition *in the circuit court*. Thus, the majority's entire discussion of the reviewing court's authority and duty regarding vacatur only adds to the confusion created by the majority's unworkable and impractical precedent. Now we have a circuit court judgment vacating Floyd's conviction and a simultaneous opinion from the reviewing court vacating that same conviction. This just confirms once more that the proper forum to address these issues is in the circuit court with an appropriate pleading and not for the first time on appeal from a termination of parental rights proceeding.

¶ 189    Lastly, above all else, what is clearly apparent from this case is that the majority has completely lost sight of the undeniable state interest in protecting children from abuse and neglect, and it has effectively erased the historical facts of N.G.'s life that led to these proceedings in the first place.

¶ 190    For all of these reasons and the reasons set forth in my initial dissent, I would grant the State's request to excise the portion of the opinion calling *McFadden*'s continued validity into question and otherwise grant its petition for rehearing.

¶ 191    JUSTICES THOMAS and GARMAN join in this dissent.